## THE VILLAGE OF BALLSTON SPA, APPELLANT, *v.* CHARLES A. MARKHAM, RESPONDENT.

*License to sell meat in a village — penalties for selling without a license, authorized by section 3, title 3 of chapter 291 of 1870.*

In an action to recover three penalties of ten dollars each, alleged to have been incurred by the defendant because on three different days he peddled meat in the village of Ballston Spa, not having obtained a license therefor, it appeared that the plaintiff, the Village of Ballston Spa, was incorporated under the general act for the incorporation of villages (Laws of 1870, chap. 291), and that its board of trustees had passed the following ordinance: "All persons within the corporate limits of this village who shall hawk or peddle meat * * * in any of the streets of this village shall pay a license" of thirty dollars therefor, and had also prescribed a penalty of ten dollars for selling without a license.

*Held,* that the ordinance was authorized by section 3 of title 3 of said chapter 291 of 1870.

That this ordinance tended to restrain and prevent the hawking or peddling of meat; and that although it also imposed a tax it was not, therefore, prohibited.

That the matter was of a purely domestic character, and that the power exercised was valid and within the constitutional competency of the legislature.

APPEAL by the plaintiff, the Village of Ballston Spa, from a judgment of the Saratoga County Court, entered in the office of the clerk of the county of Saratoga on the 21st day of September, 1889, reversing and setting aside a judgment theretofore rendered in a Justice's Court in favor of the plaintiff; also from an order of the Saratoga County Court, entered in said clerk's office on the 21st day of September, 1889, reversing and setting aside, with costs, the judgment of the Justices' Court herein.

The action was brought to recover thirty dollars from the defendant, that being the amount of three penalties for the violation of an ordinance enacted by the plaintiff, which required hawkers and peddlers of meat to pay a license of thirty dollars.

These penalties were alleged to have been incurred by the defendant because, on three different days, he peddled meat in the village of Ballston Spa without having obtained a license therefor.

The plaintiff was incorporated under the general act for the incorporation of villages, chapter 291, Laws of 1870, and the acts amendatory thereof. Its board of trustees passed and promulgated the following ordinances: " Sec. 34. All persons within the corporate

limits of this village who shall hawk or peddle meat * * * in any of the streets of this village shall pay a license therefor as follows: Hawkers and peddlers of meat, thirty dollars. * * * Licenses here mentioned, when issued, shall continue in force for one year." Section 35 prescribes a penalty of ten dollars for selling without a license. Various other licenses are in like manner provided for. The evidence showed that the defendant violated the ordinance and the plaintiff recovered judgment for thirty dollars and costs before the justice, which judgment, upon appeal, was reversed by the County Court.

*J. W. Verbeck,* for the appellant.

*W. J. Miner,* for the respondent.

LANDON, J.:

The learned county judge reversed the judgment of the Justice's Court upon the ground that the license fee here exacted by the ordinance, thirty dollars, was too excessive to be regarded as a reasonable police regulation for the protection of life, health or property, or for the promotion of good order; that it must, therefore, be considered as a tax, and that the legislature had not conferred upon the village the power to tax occupations for the purpose of producing revenue, or, at most, for any greater revenue than would defray the expense incident to granting the license.

We think the statute authorized the board of trustees to pass the ordinances in question establishing the price of the license, prohibiting peddling meat without a license, and fixing the penalty for each violation. Section 3 of title 3 of the village general act (2 R. S. [8th ed.], 967, chap. 291, Laws of 1870), provides that "the trustees shall have power, as to acts and matters within the corporate bounds, to make, publish, amend and repeal rules, ordinances and by-laws for the following purposes:"

Subdivision 22. "To restrain, regulate or prevent hawking and peddling in the streets; to regulate, restrain or prohibit sales by auction, and grant licenses to peddlers and auctioneers and fix the amount to be paid therefor," amended by chapter 281, Laws of 1878.

Subdivision 27. "The board of trustees shall have power to make and establish all legal by-laws, rules and ordinances necessary to

carry out the purposes of this act * * * and to enforce such by-laws, rules and ordinances. * * * The trustees shall also have power to prescribe penalties for a violation thereof not exceeding $100 for each offense."

Section 9, article 8 of the Constitution provides : "It shall be the duty of the legislature to provide for the organization of cities and incorporated villages, and to restrict their power of taxation, * * * so as to prevent abuses in assessments and contracting debt."

It is plain that the above legislative grants of power are within the Constitution, and are ample in their terms to embrace the ordinances of the village of Ballston Spa above cited. Undoubtedly the ordinance must be within the legislative grant of power or it is void. Here the power is "to restrain and prevent hawking and peddling in the streets," and "to grant licenses to peddlers, * * * and fix the amount to be paid therefor." Any one could peddle meat upon paying for the license.

In *City of Brooklyn* v. *Nodine* (26 Hun, 512) it was said that the power to regulate and license does not carry the power to tax. We need not question this. Here the power with respect to peddlers is to restrain and prevent and to license. The license fee exacted tends to restrain and prevent. It is also a tax, but it is not, therefore, prohibited. It is competent for the law to provide that a peddler who enjoys the benefits of the trade of a village shall contribute something in discharge of its burdens. Cases are cited in which ordinances designed to confer arbitrary power upon the authorities to do injustice to a class because of race or religious prejudices have been condemned. In *Yick Wo* v. *Hopkins* (118 U. S., 356) the Chinese were discriminated against. In *Austin* v. *Murray* (16 Pick., 121), the Roman Catholics. These have no application. Cases cited in which, under a false pretense of promoting health or good order, oppressive burdens have been imposed, do not apply. Nor do the cases cited from the Supreme Court of the United States, in which it has been held that a license imposed by State authority upon a non-resident trader of the State because he was a non-resident, was void ; or upon a trader because he dealt in the productions of other States ; or upon merchandise because it was imported from other States. These were attempts by the

State to invade the exclusive power of congress to regulate commerce among the States, or to prevent interstate commerce from being free.

The matter here is purely of a domestic character, and the power exercised is valid because authorized by the legislature within its constitutional competency. (*Village of Carthage* v. *Frederick*, 33 N. Y. St. Rep., 383; *Village of Deposit* v. *Pitts*, 18 Hun, 475; *People ex rel. Dorr* v. *Thacher*, 42 id., 349; *City of Brooklyn* v. *Breslin*, 57 N. Y., 591; *People ex rel. Larrabee* v. *Mulholland*, 82 id., 324.)

The answer raises no issue as to the incorporation of the village. The judgment of the County Court should be reversed, with costs.

LEARNED, P. J., and MAYHAM, J., concurred.

Judgment of County Court reversed and that of justice affirmed.