## CITY OF BUFFALO v. HILL.

(Supreme Court, Appellate Division, Fourth Department. January 6, 1903.)

1. REFUSAL OF LICENSE—GOOD FAITH OF PUBLIC OFFICIALS—PRESUMPTION.
     The action of a city council in refusing a license to sell meats will be presumed to have been intended for the public's benefit, and to have been based on reasons deemed adequate.

2. MUNICIPAL ORDINANCE—CHARTER POWERS.
     Laws 1891, c. 105, requires the city of Buffalo (title 2, c. 1, § 17), to pass ordinances to license and regulate butchers, and to regulate the sale of meats, fish, etc. Held to warrant an ordinance establishing public markets and requiring vendors of salt meats and fish, doing business elsewhere, to take out a license.

3. SAME—ARBITRARY POWER TO REFUSE LICENSE—DUE PROCESS OF LAW.
     A city ordinance established public markets, and required persons vending certain meats elsewhere to take out a license. The license was to be issued by the mayor on direction of the council after a two-thirds vote. The qualifications of applicants were not specified. Held, that the ordinance did not vest in the council an arbitrary power to grant or refuse a license in obedience to private motives rather than the public good, and hence was not outside the police power, so as to be obnoxious to Const. U. S. Amend. 14, § 1, or Const. art. 1, § 6, prohibiting the deprivation of property without due process of law, or section 1, prohibiting deprivation of rights except by the law of the land, etc.

4. SAME—RESTRAINT OF TRADE.
     A city ordinance establishing public markets and requiring persons vending meats elsewhere to take out a license is not void as in restraint of trade.

Appeal from municipal court of Buffalo.

Action by the city of Buffalo against Burt L. Hill. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before McLENNAN, SPRING, WILLIAMS, HISCOCK, and NASH, JJ.

Frank M. Spitzmiller, for appellant.

William H. Gorman, for respondent.

SPRING, J. This action was commenced in the municipal court of the city of Buffalo to recover a penalty of the defendant for selling meats without having procured a license or permit therefor, as required by the ordinances of said city. The charter of the city (chapter 105, Laws 1891) requires the common council to enact ordinances (title 2, c. 1, § 17) "to license and regulate plumbers, auctioneers, butchers, hawkers, peddlers," etc., and "to regulate * * * the sale of meats, fish, and vegetables." The common council of the city established four markets located in different parts of the city, and intended to localize as far as possible the sale of perishable food

¶ 4. See Licenses, vol. 32, Cent. Dig. § 37; Municipal Corporations, vol. 36, Cent. Dig. §§ 1356, 1540.

products, and to keep their vending and operation more easily within the surveillance of the police department, to the end that the public health may the better be conserved. The regulation and management of the same, and the rentals for stalls, stands, and booths, are minutely set forth in the ordinance. Chapter 7. The sale of meats and other food products are not prohibited outside of the city markets, but a license fee of $15 is exacted before a person may engage in the sale of "fish or salt meat outside of the public markets." Section 27, c. 7, of Ordinances. The license is issued by the mayor of the city upon the direction of the common council, after a two-thirds vote of that body. Sections 27, 28. Any violation of this ordinance is punishable by a fine of not to exceed $50. Section 34. The defendant applied for a license to sell meats at 295 West Ferry street, in said city. His application was refused in March, 1902, but he carried on his shop, selling meat daily, the same as if duly licensed, and this action was commenced to recover the penalty referred to. The contention of the defendant is that the ordinance vested the common council with arbitrary authority, and is in restraint of trade, and in contravention of the state constitution (article 1, §§ 1, 6), and of section 1 of the fourteenth amendment of the constitution of the United States.

The principles underlying this controversy have received animated and learned consideration from the courts. The right of the individual to carry on any gainful, lawful occupation without municipal interference, unless conducted in a manner detrimental to the public, is guarantied to him as one of his inalienable prerogatives. On the other hand, the right of the legislature, and, by its delegation, the municipality, to enact laws or ordinances for the preservation of the public health, even though individual loss results, is a necessary power incident to the government of cities. The axiom, "Salus populi lex suprema est," is more than a mere sentiment, and has become one of the props of the police power; an elastic mantle, whose ample folds cover much municipal legislation which finds no other justification. Between these two clashing principles it is often difficult to determine when the action of the municipality transcends its powers and transgresses upon the rights of the individual. In the present case the city has established certain markets for the benefit of the public. It provides and maintains booths and stands therein, and necessarily a large outlay is incurred in their operation and maintenance. It exacts a rental for their use, and, in order to concentrate the traffic in these markets, and to equalize the expense of their maintenance with that of carrying on the business outside, and to cover the extra cost of the supervision needed over those conducting the meat business in other portions of the city, a license fee of $15 is imposed. This seems a reasonable sum, and is a license, rather than a tax. 1 Dill. Mun. Corp. (3d Ed.) §§ 115, 358; Ash v. People, 11 Mich. 347, 83 Am. Dec. 740. The right of the municipality to impose the fee and require the license for the public good, we think is clear; but the contention of the appellant is that the power of determining upon whom the privilege shall be conferred rests arbitrarily with the common council. Merit, or the lack of it; whether

the business is to be carried on in a cleanly manner or the reverse; whether the meat to be vended is wholesome or tainted,—it is claimed are not considerations which may influence the granting or the with-holding of the license.   Does the ordinance involve a proper exercise of the municipal regulation, even though it may operate to prohibit in a given instance the sale of meats, and thus impair the individual's property, or interfere with his daily occupation?   One or two sug-gestions may aid somewhat in appreciating the discussion of the au-thorities to be made later on.   In an action of this kind, the motives —the animus—of the individual members who compose the council are not pertinent.   The presumption always is that in the exercise of a discretionary power by any executive or legislative body a proper motive and a valid reason existed for its action.   A public declaration of its reasons would neither be wise nor beneficial, for ordinarily it would not allay the irritation of the one deprived of the favor sought, and the people of the city at large have little concern in the exercise of those official functions which relate to an indi-vidual.   In considering the question of authority, therefore, we must do so upon the assumption that the municipal body has intended to act for the benefit of the public at large, and that the refusal to grant the license was based upon reasons which it deemed adequate for that action.   Two elements may control the municipal body in the consideration of an application for a license to sell meat:   First. The individual applicant.   Will he be likely to sell wholesome meat?   Will his market be cleanly?   Is he a fit man?   Secondly. The place where he expects to ply his trade.   Is it suitable and proper?   It is to be noted in passing that the delegation in the charter to the common council "to license and regulate butchers" and "to regulate   *   *   * the sale of meats" by ordinances is ample warrant for the ordinances already referred to.   Cronin v. People, 82 N. Y. 318, 37 Am. Rep. 564;  City of Rochester v. West, 164 N. Y. 510, 58 N. E. 673, 53 L. R. A. 548, 79 Am. St. Rep. 659.

We will refer to a few of the authorities which we urge tend to uphold the ordinance under review.   In Village of Buffalo v. Web-ster, 10 Wend. 100, a by-law of the village prohibited any person from selling meats except at the public markets.   The defendant exchanged a quarter of a lamb for groceries, and was sued for a penalty fixed for a violation of the ordinance, and a recovery had, which was reversed by the common pleas.   On appeal to the supreme court this judg-ment was reversed, and that of the justice sustained.   The validity of the by-law was the only subject involved, and the court upheld it, holding that it was a regulation of the business, "not a restraint of it," and that the ordinance must be sustained if "reasonable, and for the common benefit."   Two other early cases are in the same line:   City of Brooklyn v. Cleves, Lalor's Supp. 231, and Bush v. Seabury, 8 Johns. 418.   In City of Brooklyn v. Breslin, 57 N. Y. 591, the ordinance considered prohibited the driving of carts within the city for hire unless a license had been issued to the cartman by the mayor.   The license was held to be a proper regulation of the carting business, and not in restraint of trade.   Page 596.   In People v. Mulholland, 82 N. Y. 324, 37 Am. Dec. 568, the common council

of the city of Syracuse passed an ordinance declaring it a misdemeanor for a common carrier to peddle milk in the city without a license, and fixed the amount thereof. It empowered the mayor to grant a license to "such persons as, in his judgment, shall appear proper, and the best calculated to secure to the inhabitants of said city pure and wholesome milk." The court, in its vindication of the power, say:

"The license and the fee therefor are a means of regulation and control, and the penalty is a means of enforcing a proper restraint upon the persons by whom milk is offered. Being such, it was within the scope of the general and particular power of the city to make the by-law."

In People v. Grant, 126 N. Y. 473, 27 N. E. 964, the act under review required every auctioneer doing business in New York City to obtain a license from the mayor. The relator in due form applied to the mayor for the license, which was refused. The contention urged was that it was obligatory upon the mayor to issue the license. The court of appeals held otherwise, deciding the power was discretionary, and its exercise not subject to supervision by the courts. The books abound with further illustrations of the exercise of this power. City of Rochester v. West, 164 N. Y. 510, 58 N. E. 673, 53 L. R. A. 548, 79 Am. St. Rep. 659; Village of Ballston Spa v. Markham, 58 Hun, 238, 11 N. Y. Supp. 826; City of Buffalo v. Schleifer, 51 N. Y. St. Rep. 58, 21 N. Y. Supp. 913; City of St. Paul v. Colter, 12 Minn. 41 (Gil. 16), 90 Am. Dec. 278.

It will be observed that in some of the cases adverted to the test upon which the discretion of the mayor was to be exercised was defined in the act or ordinance creating the authority, while in others there was no limitation placed upon it. It does not follow that the omission to prescribe the bounds of the authority carries the conclusion that is vested arbitrarily in the official or body to whom it is committed. The difficulty of defining in a given case what standard shall be applied in the disposition of the petition, and the fact that the conservation of the public health is the basis for the existence of the authority, indicate the reason for the absence of the definition; but it is no warrant for the inference that the power is an arbitrary one, to be exercised in ruthless disregard of the rights of any class or individual. The discretionary authority must rest somewhere, and experience has proven that its lodgment in some body or official of the municipality is more efficacious than to leave it with the legislature, to whom the local situation may be unknown. We will advert to a few of the leading cases which it is claimed establish the principle that the ordinance under consideration is unconstitutional. In re Jacobs, 98 N. Y. 98, 50 Am. Rep. 636, involved a discussion of an act of the legislature ostensibly intended for the improvement of the public health "by prohibiting the manufacture of cigars and preparation of tobacco in any form in tenement houses in certain cases," and making its violation a misdemeanor. The relator, who was a cigar maker in a tenement house, was arrested, and held upon the examination by the justice. A writ of habeas corpus was granted by a justice of the supreme court, but subsequently dismissed by him. Upon appeal the order was reversed by the gen-

eral term, and the relator discharged from custody, and the order was affirmed by the court of appeals in an aggressively vigorous opinion. The court placed its decision upon the ground that the act did not relate to the public health in fact, and that the business sought to be regulated was not in any way detrimental to the health of the other occupants of the tenement house. In People v. Marx, 99 N. Y. 377, 2 N. E. 29, 52 Am. Rep. 34, the legislature endeavored to prohibit the manufacture of oleomargarine, or any substitute for butter or cheese. The act was held to be unconstitutional, and vicious, in that it destroyed an important industry, which produced a wholesome article of diet. Restrictions upon the manufacture of this food product to prevent deception were, however, held valid in People v. Arensberg, 105 N. Y. 123, 11 N. E. 277, 59 Am. Rep. 483. The legislature attempted by enactment to prohibit the delivery of a gift or prize in connection with the sale of food, and the court of appeals held this was an unauthorized deprivation of the property rights of the individual. People v. Gillson, 109 N. Y. 389, 17 N. E. 343, 4 Am. St. Rep. 465. That court recently decided that the attempted prohibition of the selling of tickets for transportation by any person except a common carrier transcends the police power, and countervailed the constitutional provision which assured to the citizen the largest liberty for his individual and property rights. People v. Warden of City Prison, 157 N. Y. 116, 51 N. E. 1006, 43 L. R. A. 264, 68 Am. St. Rep. 763. A municipal ordinance was adopted in the city of San Francisco on its face to regulate the carrying on of the public laundries without the consent of the board of supervisors, excepting in buildings constructed of brick or stone. The laundry business was conducted in the main by the Chinese, and in wooden buildings, and the purpose of the ordinance was to exclude from the city people of that nationality. The United States supreme court decided that the ordinance contravened the fourteenth amendment to the constitution, which forbade any state from depriving "any person of life, liberty, or property without due process of law," and that protection was guarantied to every person within our territorial jurisdiction, whether citizen or alien; and it was further assured to the Chinese by treaty between the government of the United States and that of China. Other cases are Colon v. Lisk, 153 N. Y. 188, 47 N. E. 302, 60 Am. St. Rep. 609; Forster v. Scott, 136 N. Y. 577, 32 N. E. 976, 18 L. R. A. 543. In all these cases the comprehensiveness of the power of the state or municipality to regulate business for the public welfare was fully recognized. Each case was disposed of on its own peculiar facts, the groundwork of which was an attempt to use the police power or public welfare as a guise to justify an enactment the import of which was to stifle competition or to support individual or class favoritism.

After all, in every case which may arise the criterion by which the ordinance or enactment is to be measured is whether it is reasonable. City of Buffalo v. Collins Baking Co., 39 App. Div. 432, 57 N. Y. Supp. 347. If it truly is a judicious regulation of any occupation for the benefit of the public, the courts will uphold it, within the compass of the police power. If that power is invoked to shield an un-

fair discrimination, the ordinance will receive judicial condemnation. There is no class of business calling for more watchful supervision than that of the sale of meats. That article of food soon becomes tainted and unwholesome, and disease occurs by inhaling the noxious ·odors emanating from it when unhealthy. · The meat vender deals with the public. For their good his vocation is subject to inspec- ·tion and scrutiny. To the municipality must be intrusted the au- thority to regulate it whenever necessary, and beyond that, within .reasonable limits, to prevent unfit persons from engaging in it. It .is another instance when the rights of the individual must yield to ·the public good. It is not essential that the warrant of authority ·shall require the official or municipal body to state in distinct terms the reason why it brings the business under scrutiny, nor why the granting of a license is declined in any particular case. If the or- dinance read that the common council, in its judgment, should author- ize or decline to authorize the mayor ,to grant the license, it would not add to or detract from the power which is already vested·in it. The power vested in any event is to be exercised in the discretion of that body.. There is some proof in the present case that the re- fusal to issue the license was to gratify personal pique, or by rea- ·son of a political pull. While it is unnecessary for us to pass upon the question of the power of the court to review a flagrant abuse ·of discretion by the common council suffice it to say, if a case of that ·kind were properly presented, the court would doubtless not lack the .ability to find some effective way to reach it for condemnation. The .judgment should be affirmed, with costs. •

Judgment affirmed, with costs. All concur.