PEOPLE *v.* RIVERSIDE SCRAP IRON & METAL CO.

1. MUNICIPAL CORPORATIONS — DETROIT CHARTER — POWERS—ORDI-
   NANCES—JUNK DEALERS.

   The common council of the city of Detroit, under the police
   power conferred by its charter, has the power to license
   and regulate wholesale junk dealers.

2. SAME.

   The provisions of an ordinance of the city of Detroit "to
   license and regulate the business of junk dealers," *held*,
   to include all who buy junk, whether at wholesale or piece-
   meal, and whether it is the main business or merely inci-
   dental.

3. SAME—VALIDITY.

   The provision in the ordinance prohibiting the sale of any
   article until the same has been in the dealer's possession
   at least five full days, *held*, not to be such an unreason-
   able and arbitrary interference with the dealer's business
   as to require the court to declare it void, although loss
   might be occasioned by reason of variance in price during
   the five days.

Error to recorder's court of Detroit; Jeffries, J.
Submitted June 5, 1918. (Docket No. 36.)   Decided
July 18, 1918.

The Riverside Scrap Iron & Metal Company was
convicted of violating an ordinance, and sentenced to
pay a fine of five dollars.   Affirmed.

*Robert M. Brownson* and *Denton Guinness,* for ap-
pellant.

*Divie B. Duffield,* Corporation Counsel, and *Vincent
M. Brennan,* Assistant Corporation Counsel, for the
people.

KUHN, J.   An ordinance of the city of Detroit,

See notes in 32 L. R. 116; 24 L. R. A. (N. S.) 1168.

which is entitled, "An ordinance to license and regulate the business of junk dealers," provides in part as follows:

"Section 1. No person, partnership or corporation shall engage in the business of a junk dealer for the purchase or sale of what is commonly called junk, rags, paper, bagging, iron, brass, copper, tin, zinc, aluminum, scrap metal, bottles and other articles, whether manufactured or in the process of manufacture, or raw material, whether old or new, nor transport through the streets or alleys of the city of Detroit any conveyance for the purpose of collecting or disposing of such articles without a license from the mayor as herein provided.

"Section 2. The mayor is hereby authorized to grant a license to any person, persons or corporation of good character and standing, being a resident and citizen of the city of Detroit, to engage in the business of a junk dealer, for the purchase and sale of the articles mentioned in section 1, on paying into the city treasury the sum of one dollar ($1.00) and executing a bond to the city of Detroit in the penal sum of two hundred dollars ($200.00) with one or more sureties to be approved by the mayor, conditioned that he will faithfully observe the provisions of this ordinance.

"Section 3. The mayor is hereby authorized to grant a license to any person of good character being a resident or citizen of the city of Detroit to engage in the business of buying and selling articles mentioned in section 1 with a cart, wagon or other vehicle on his paying into the city treasury the sum of fifty cents ($.50) and every person receiving such license shall have the number of his license placed in a conspicuous place on each side of said vehicle by means of two tin labels, such labels to be furnished by the license collector, of suitable pattern, which pattern shall be changed on the first day of June of each and every year for the use of the succeeding year."

The defendant, a Michigan corporation, was convicted in the recorder's court of the city of Detroit for violation of said ordinance, because of failure to take out a license. The defendant buys scrap iron,

mostly from manufacturers and dealers, and it is claimed that at least 60 per cent. of its business never comes into its warehouse or yards. That about 35 per cent. is iron bought directly from factories and manufacturers in Detroit and that about 5 per cent. is brought into the yards by licensed junk gatherers. Its business is wholesale, and it has nobody in its employ who goes out with a wagon and buys and collects; the purchases being made by the wagonload from the licensed junk gatherers.

On this appeal it is the principal contention of respondent's counsel that the defendant is not a "junk dealer" within the meaning of the ordinance. Admittedly the defendant engages in the purchase and sale of junk, at least as to 5 per cent. of its business, but it is said that because defendant purchased in wagonloads at wholesale rather than in smaller quantities, the terms and provisions of the ordinance do not apply. An examination of the provisions of the ordinance above set forth discloses that in section 1 the words "junk dealer" are used in a comprehensive way and would, it seems, include all who buy junk, whether at wholesale or piecemeal. Section 2 provides for the licensing of junk dealers upon the payment of a fee of one dollar and upon the filing of a bond in the sum of $200, while section 3 makes provision for the licensing of persons buying and selling junk by wagon or other vehicle upon the payment of a license fee of 50 cents and without being required to file a bond. It can be admitted that section 3 applies only to junk gatherers, and for them apparently it is only necessary to pay the 50-cent fee and, upon satisfying the mayor of good character, the applicant will be entitled to a license. An examination of section 2, however, shows that it is more comprehensive and provides, in addition to the fee of one dollar, for a bond of $200 with one or more sureties to be approved

by the mayor. In our opinion this provision covers all dealers in junk, whether they are engaged by wholesale or retail. In the case of *Weadock* v. *Judge of Recorder's Court,* 156 Mich. 376, the meaning that should be given to the words "junk dealer" was under consideration, and the court said:

"He buys old junk from the owner or from the junk gatherer, and keeps the same in his yard or place of business until sales can be made."

The defendant in this case admittedly buys the same sort of property as the licensed junk gatherer buys, but simply buys it in much greater quantities. The common council, under the police power conferred by the charter provision, has unquestionably the power to license and regulate wholesale junk dealers. See *Weadock* v. *Judge of Recorder's Court, supra.* If the construction insisted upon by defendant's counsel could be given to the terms of this ordinance, considerable of the value of the ordinance would be destroyed, because if part of the property it was sought to trace got into the hands of the wholesale dealer, it would become immune from police visitation and regulatory measures. In *City of Grand Rapids* v. *Braudy,* 105 Mich. 678, it was said, with reference to this class of business:

"The necessity of a rigid control over this business in our large cities is clear. Convictions are difficult, though the public authorities may be well convinced that stolen goods are bought and sold at these places. The business is not necessary to the welfare of society or the public. The common council, with the knowledge of all the facts before them to a greater extent than courts can possibly have, have determined that it is well, in their judgment, to require these conditions. While the exercise of any arbitrary power may seem harsh, still we are of the opinion that this requirement is not so unreasonable as to require the courts to declare it void."

It is also insisted that the junk business of the defendant is purely incidental to its main business, inasmuch as it consists of only 5 per cent. of its total business.  We do not see how it is important that the junk business done by the defendant constitutes only a small percentage of its total business, for while, relatively, the percentage may be small, nevertheless the purchase of junk in wagonloads could hardly be called a negligible activity.  Being engaged in the business admittedly of buying junk as a dealer, it clearly comes within the provisions of the ordinance, and a license should be required.

It is also insisted that the court should have permitted the effect of this ordinance on its business to be shown, as in section 6 of the ordinance it is provided:

"No person licensed under the provision of this ordinance shall sell or remove from his place of business any article or articles purchased until the same has been in his possession at least five full days,"

—and the defendant complains of not being permitted to testify that junk handled by it would vary in price during the said period of five days.  Conceding for the purpose of this contention that the defendant would suffer some loss by being obliged to hold the junk five days, it does not follow that the questions asked were necessarily relevant.  It is true that a regulation of this kind under the police power may entail pecuniary loss upon the person engaged in the regulated business, but it is rather for the legislature to determine whether the benefits to society on the one hand outweigh the pecuniary loss to the licensee on the other.  We are not impressed that the regulation was such an unreasonable and arbitrary interference with the defendant's business as to require the court to declare it void.

. We have examined the other points raised by counsel, and deeming them without merit, they will not need further discussion.

Judgment of the lower court is affirmed.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred.