PEOPLE *v.* HARLEY.

1. EVIDENCE—JUDICIAL NOTICE TAKEN OF CONGESTED CONDITIONS AT HIGHLAND PARK.

In considering the constitutionality of an ordinance of the city of Highland Park requiring the operators of public lodging houses to obtain licenses, the court will take judicial notice of the fact that said city contains one of the largest manufacturing plants in the world, that people of many nationalities flock thither for employment, and that, said city being nearly surrounded by the city of Detroit, the housing conditions are very congested, there being a temptation to house more people in a given area than is good for the public health and morals, which would seem to render some sort of supervision imperative.[1]

2. LICENSES—CONSTITUTIONAL LAW—ORDINANCE NOT VOID BECAUSE NO STANDARD PRESCRIBED FOR TESTING SUITABLE PERSONS.

An ordinance of the city of Highland Park requiring the operators of public lodging houses to obtain licenses is not open to the objection that it is unconstitutional as a grant of arbitrary power to the city council to grant or withhold a license, or, if granted, to revoke at will, because it prescribes no standard by which an applicant may be tested, but it contemplates consideration and care, and when the applicant is found to be a suitable person it is mandatory to grant a license, and if the council does not act fairly the courts are open for relief.[2]

3. SAME — NOT IN VIOLATION OF CONSTITUTIONAL PROVISION AGAINST UNREASONABLE SEARCHES AND SEIZURES.

Section 5*a* of said ordinance providing that the chief of police, members of the police force, health officer, and all other officers charged with the enforcement of the ordinance shall at all times have free access to all parts of the premises licensed, is not in violation of the constitutional provision against unreasonable searches and seizures; the place licensed not being a private dwelling but a public rooming house.[3]

[1]Evidence, 23 C. J. § 1992 (1926 Anno); [2]Licenses, 37 C. J. §§ 48, 92, 97; [3]Id., 37 C. J. § 48; Searches and Seizures, 35 Cyc. p. 1274.

On power to require license to keep inn, hotel, boarding or lodging house or restaurant, see note in L. R. A. 1915B, 1097.

Error to Wayne; Richter (Theodore J.), J. Submitted January 15, 1925. (Docket No. 122.) Decided April 24, 1925.

Morris Harley was convicted of operating a public lodging house in the city of Highland Park without a license, and sentenced to pay a fine of twenty dollars. Affirmed.

*Hugh G. Allerton* (*Henry C. Bogle*, of counsel), for appellant.

*Claude H. Stevens*, City Attorney, for the people.

MOORE, J.    Defendant was convicted of operating a public lodging house in the city of Highland Park without obtaining a license as required by an ordinance of that city.    The case was tried before the circuit judge without a jury, and upon an agreed state of facts.

We quote from the record:

"It is agreed by the parties that defendant had no license as required by the ordinance herein in question and that the sole question raised is the constitutionality of the said ordinance No. 326, as amended, of the city of Highland Park, a copy of which is included in this record together with a copy of the pertinent sections of the charter of said city of Highland Park."

Because of this agreement we shall limit our inquiry to the constitutionality of the ordinance.

The provisions of the ordinance that are material to this inquiry are the following:

"SECTION 2. Upon receipt of such application, the city council, before acting upon it, may refer the same for investigation to any officer or officers of the city, who shall report to the council within a reasonable time.    If upon the receipt of such application, or if referred as above provided upon the receipt of such report, the city council is satisfied that the applicant

is a suitable person to carry on such business and that the granting of such license will not be detrimental to the interests of the public, nor in violation of any statute or any ordinance, rule or regulation of the city of Highland Park, it shall grant such license to the applicant, to be issued upon the payment to the city clerk of the fee hereinafter prescribed.   *   *   *

"SECTION 4.   *   *   *   No license shall be issued for any premises which are restricted to private residence purposes.

"SECTION 5. Every license shall provide and maintain a register or record in which he shall inscribe in ink at the time of arrival, the correct name of every person who is charged or pays for lodging or the rent of a room, the home address of such person or his last place of residence and the number of the room to which such person has been assigned.   *   *   *

"SECTION 5A. The chief of police, the members of the police force, the health officer and all other officers who are charged with the enforcement of this ordinance shall at all times have free access to all parts of the premises for which a license has been granted, as provided in this ordinance, and refusal to give such access by any person on such premises shall be a sufficient cause to work a forfeiture of said license.

"SECTION 6. Any license granted under this ordinance shall be revocable by the city council at any time for a violation of any law of the State or any rule, regulation or ordinance of the city, or if the council shall deem such licensee an unfit person to carry on said business, or if it shall be satisfied that said public lodging house as conducted is detrimental to the interests of the public."

It was insisted before the trial judge and is insisted here that said ordinance is unconstitutional because it confers upon the city council the arbitrary power to grant or withhold, or if granted to revoke, a license to operate a public lodging house because of the fact that the ordinance prescribes no standard by which each person applying for a license can be tested as to his qualifications to operate said lodging house. Counsel present this claim in great detail and insist

that "the decisions of the Michigan Supreme Court are decisive of the question under discussion;" citing *Devereaux* v. *Genesee Township Board,* 211 Mich. 38; *In re Frazee,* 63 Mich. 396 (6 Am. St. Rep. 310); *Robison* v. *Miner,* 68 Mich. 549; *Melconian* v. *City of Grand Rapids,* 218 Mich. 397; *Samuels* v. *Couzens,* 222 Mich. 604; *Harrigan & Reid Co.* v. *Burton,* 224 Mich. 564 (33 A. L. R. 142). Counsel also cite as sustaining their contention *Yick Wo* v. *Hopkins,* 118 U. S. 356 (6 Sup. Ct. 1064); *Tai Kee* v. *Minister of Interior,* 12 Hawaii, 164; *State, ex rel. Makris,* v. *Superior Court,* 113 Wash. 296 (193 Pac. 845, 12 A. L. R. 1428); *Vincent* v. *City of Seattle,* 115 Wash. 475 (197 Pac. 618); *City of St. Paul* v. *Laidler,* 2 Minn. 190 (72 Am. Dec. 89); *Ensley* v. *State,* 172 Ind. 198 (88 N. E. 62); *Meyer* v. *Nebraska,* 262 U. S. 390 (43 Sup. Ct. 625, 29 A. L. R. 1446); *Kenney* v. *Randall* (N. J.), 122 Atl. 379; and other cases found in the brief of counsel.

Counsel for the city of Highland Park cites a long list of cases which he insists sustain the ruling of the trial judge. We shall refer to some of these cases more at length later.

After examining the cases cited by counsel we think we can agree with counsel for appellant in the statement that

"An attempt to reconcile all the decisions in the various jurisdictions in cases of this character in regard to the constitutionality of such ordinances would no doubt be somewhat difficult. At first thought decisions in such cases in the same jurisdiction seem to be in conflict, if regard is had merely to the language of the various opinions without considering the character of the business which it is sought to license or regulate."

But we think the cases cited by counsel may be distinguished from the instant case.

In this connection it may be well to consider the

situation at Highland Park.     In this city is one of the largest manufacturing plants in the world.     We may take judicial notice that people of many nationalities flock thither for employment.     Many of them have different standards of living from those who have found a proper use of water and soap.     Many of them have no families and if they are to find shelter must find it in public lodging houses.     We may also take judicial notice of the fact that Highland Park is nearly surrounded by the city of Detroit, with more than a million people, and that in Detroit and in Highland Park the housing conditions are very congested, and there is a great temptation to house more people in a given area than is good for the public health and public morals.     These conditions would seem to make some sort of supervision imperative.

The question of granting licenses in this State is not a new one.     Counsel for the city of Highland Park cites the following:     *Sherlock* v. *Stuart*, 96 Mich. 193 (21 L. R. A. 580) ; *City of Grand Rapids* v. *Braudy*, 105 Mich. 670 (32 L. R. A. 116, 55 Am. St. Rep. 472) ; *People* v. *Riverside Scrap Iron & Metal Co.*, 202 Mich. 469; *Hughes* v. *City of Detroit*, 217 Mich. 567; *Melconian* v. *City of Grand Rapids*, 218 Mich. 397.     He also cites other cases; we quote from the brief as follows:

"As was said in *City of Grand Rapids* v. *Braudy*, 105 Mich. 678:

" 'The necessity of a rigid control over this (junk) business in our large cities is clear.     Convictions are difficult, though the public authorities may be well convinced that stolen goods are bought and sold at these places.'

"The language used in the opinion in the case of *State* v. *Cohen*, 73 N. H. 543 (63 Atl. 928), is applicable to the present case:

" 'These officers (mayor and aldermen) were not to license persons generally or such persons as they saw fit but only "suitable persons."     There is nothing in the statute having the

least tendency to show an intention that there was to be any discrimination among "suitable persons" or that any persons were to be adjudged unsuitable excepting those who in the conduct of the business, would probably defeat, or attempt to defeat, the purpose of the legislature in requiring a license. All suitable persons who applied were to have licenses. The provision was not intended as a grant of arbitrary power, but only as the imposition of a duty upon those officers to be performed by an impartial exercise of a reasonable discretion.'

"In the case of *State, ex rel. Minces,* v. *Sheonig,* 72 Minn. 528 (75 N. W. 711), the court uses the following language:

" 'But granting or refusing a license always involves the exercise of a reasonable discretion in determining whether the applicant is or is not a fit person to whom to issue a license. A city council is not absolutely bound to issue a license to conduct such sales to every applicant, regardless of his character, who will pay the required fee. * * * The power to grant licenses implies the power to refuse to do so for good cause. If they should arbitrarily, and not in the honest exercise of a sound discretion, refuse to grant a license for the purpose either of discriminating between citizens, or of prohibiting the business altogether, no doubt the aggrieved party would have his legal remedy. But, as in the case of an act of the legislature, so in the case of a municipal ordinance, every presumption is in favor of its validity. Hence, if it is susceptible of two constructions, that one must be adopted which will sustain the ordinance. Indeed in many cases the courts will, if necessary, in order to sustain a statute or ordinance, cut down its language below its ordinary and natural meaning. Under this rule, we think this ordinance should be construed as merely giving to the city council that reasonable discretion which they would have possessed in any event.'

"In the case of *Cutsinger* v. *City of Atlanta,* 142 Ga. 555 (83 S. E. 263, L. R. A. 1915B, 1097, Ann. Cas. 1916C, 280), the court held that the keeping of a public lodging or rooming house is a business so far affecting the public interest as to authorize the regulation and the licensing of the same; and that it was proper and constitutional to give the council discretion in granting or refusing lodging house licenses, on the ground that that business so far affects the public health, morals and welfare as to warrant it.

"The act in that case provided that such license may be granted or refused in the discretion of the mayor and council.    In its opinion the court in passing upon the question of whether this conferred arbitrary power said:

" 'We think that such was not the intent of the act under consideration, but to confer ministerial discretion.    For an arbitrary abuse of such power has the citizen no recourse in the courts?    The authorities above cited do not sanction the conferring of arbitrary authority or its exercise.    On the contrary, they sustain the general grant of discretionary power to issue licenses, under the police power (certainly as to things which cannot be prohibited, as the sale of whisky can be), on the ground that it does not seek to confer arbitrary power, and that, if the power is sought to be arbitrarily and wrongfully exercised, the courts will apply a remedy.'

"The opinion then quotes from the case of *City of Buffalo* v. *Hill*, 79 App. Div. 402 (79 N. Y. Supp. 449), in which it is said:

" 'It will be observed that in some of the cases adverted to the test upon which the discretion of the mayor was to be exercised was defined in the act or ordinance creating the authority, while in others there was no limitation placed upon it.    It does not follow that the omission to prescribe the bonds of the authority carries the conclusion that it is vested arbitrarily in the official or body to whom it is committed.    The difficulty of defining, in a given case, what standard shall be applied in the disposition of the petition, and the fact that the conservation of the public health is the basis for the existence of the authority, indicate the reason for the absence of the definition, but it is no warrant for the inference that the power is an arbitrary one to be exercised in ruthless disregard of the rights of any class or individual.'

"And again (79 App. Div. at page 409) :

" 'While it is unnecessary for us to pass upon the question of the power of the court to review a flagrant abuse of discretion by the common council, suffice it to say that if a case of that kind were properly presented the court would doubtless not lack the ability to find some effective way to reach it for condemnation.' "

The language used by this court in *Melconian* v. *City of Grand Rapids*, 218 Mich. 397, and in *G. F.*

*Redmond & Co.* v. *Securities Commission,* 222 Mich. 1, is pertinent in considering the instant case. Those cases are so recent and so accessible that we shall not quote from them. See, also, *Mutual Film Corporation* v. *Industrial Commission,* 236 U. S. 230 (35 Sup. Ct. 387, Ann. Cas. 1916C, 296) ; *Yee Bow* v. *City of Cleveland,* 99 Ohio St. 269 (124 N. E. 132, 12 A. L. R. 1424) ; *Gundling* v. *City of Chicago,* 177 U. S. 183 (20 Sup. Ct. 633).

In the instant case if the defendant had applied for a license it would have been the duty of the city council to consider his application, and if he was found to be a suitable person the ordinance is not permissive simply, but is mandatory, to wit "it shall grant such license to the applicant." This does not contemplate an arbitrary exercise of power according to caprice or whim, but it does contemplate consideration and care. The power to decide who is suitable must be lodged somewhere. Who is better fitted to decide than the local officers who know local conditions? It must be assumed they will act fairly. If they do not the courts are still open. But it is said the applicant by reason of the provision in section one of the act must agree that the license may be suspended or revoked at the will of the city council.

This provision should be read in connection with the provisions of section two, and what we have just said in relation to that section will apply here. See *City of Grand Rapids* v. *Braudy,* 105 Mich. at p. 677.

Counsel say:

"The ordinance is violative of the constitutional provision against unreasonable searches and seizures.

"Section 5 (a) as amended, provides that the chief of the police, members of police force, health officer and all other officers charged with the enforcement of the ordinance, shall at all times have free access to all parts of the premises for which a license has been

granted. This provision certainly ignores the protection which the Constitution seeks to provide against unreasonable searches and seizures and in requiring a search warrant."

They cite no cases in support of this claim. It must be remembered that this is not a private dwelling house, but is a public rooming house. See *Keiper* v. *City of Louisville*, 152 Ky. 691 (154 S. W. 18).

If the keeper of the public lodging house is observing the provisions of the ordinance under which he is licensed to do business, he has nothing to fear from an inspection of the premises by the chief of police, the health officer or other officers whose duty it is to enforce the ordinance.

We think the ordinance is constitutional. The conviction is affirmed. The case is remanded for further proceedings.

MCDONALD, C. J., and CLARK, BIRD, SHARPE, STEERE, and FELLOWS, JJ., concurred with MOORE, J.

WIEST, J. (*concurring*). I concur in the result. Power to regulate public lodging houses is vested in this municipality and may be accomplished by license control within reasonable limits.

I reserve decision on some of the provisions of the ordinance, not mentioned by Mr. Justice MOORE, until presented in a case demanding their consideration.

BIRD, J., concurred with WIEST, J.