UNITED TAXICAB BOARD OF TRADE, INC., and Others, Plaintiffs, *v.* THE CITY OF NEW YORK and Others, Defendants.

Supreme Court, New York County, November 10, 1933.

*Hotchner & Finn* [*I. Maurice Wormser* and *Morris G. Duchin* of counsel], for the plaintiffs.

*Arthur J. W. Hilly, Corporation Counsel,* for the defendants.

COHN, J.   This is a motion to dismiss for insufficiency each of three causes of action set forth in the complaint.  The action is brought to enjoin the defendant from attempting to enforce an ordinance which purports to impose upon licensees of taxicabs a license fee of five cents for each fare collected, in addition to the initial license fee heretofore required.

There are three plaintiffs.  One of them, the United Taxicab Board of Trade, Inc., is a trade association which includes among its members licensees, owners and operators of about 3,700 taxicabs.  Another, Fannie Levine, a taxpayer of the city of New York, liable to pay taxes on property assessed in the sum of at least $1,000.  The third plaintiff is Beacon Transportation Co., Inc., the licensee, owner and operator of 100 taxicabs in the city of New York.

Of the three plaintiffs, Beacon Transportation Co., Inc., as the licensee, owner and operator of 100 taxicabs in the city of New York, is directly affected by the new ordinance which purports to require the licensee of each taxicab to pay to the bureau for licensing public hacks, not later than the tenth of each month, an amount equivalent to five cents for each fare collected during the preceding month.  The ordinance provides for the immediate revocation of the license of any licensee who shall fail to make such payment.  As to the plaintiff United Taxicab Board of Trade, Inc., the mere fact that its membership includes the licensees, owners and operators of a considerable number of taxicabs is insufficient to confer upon it the right to prosecute an action of this character.  The remaining plaintiff, Fannie Levine, is clearly not entitled to the relief sought in view of the fact that illegality alone is not enough to sustain a taxpayer's action.  This is well settled.  (*Western N. Y. Water Co.* v. *City of Buffalo*, 242 N. Y. 202.)  The complaint must, there-

fore, be dismissed as to the plaintiffs United Taxicab Board of Trade, Inc., and Fannie Levine.

We come now to the question of the sufficiency of the three causes of action in so far as they are asserted by Beacon Transportation Co., Inc., the plaintiff who may maintain an action of this nature.

A proper understanding of the first cause of action necessitates a brief resume of previous legislation affecting the licensing of taxicabs. For many years prior to 1931 the licensing and regulation of hacks, cabs and taxicabs, and the maximum rates of fare to be charged were covered by article 8 of chapter 14 of the Code of Ordinances. In 1925 the jurisdiction to issue, transfer, suspend and revoke hack licenses was transferred from the commissioner of licenses to the police department by the addition of section 368 to the Greater New York Charter. In 1931 chapter VIII-A, consisting of sections 369 to 377, inclusive, was added to the charter by Local Law No. 31 of that year. This chapter created the board of taxicab control and transferred to it jurisdiction and control of the regulation, operation and licensing of taxicabs, for hire, automobiles and hacks in the city of New York. It empowered the board to fix rates of fare and to establish regulations regarding the issuance, suspension and revocation of licenses. It further provided that the board was to adopt a uniform code of rules and regulations, including a schedule of rates of fare and license fees, which code was to become part of the general ordinances of the city. The enforcement of this code and the issuance, revocation and renewal of licenses pursuant to the rules and regulations adopted by the board were to remain with the police department. The new law also contained the following important provision: "All ordinances or local laws, or parts thereof, relating to the subject matter of this chapter, and in conflict or inconsistent herewith are hereby repealed." (§ 376.)

The board of taxicab control adopted a code of uniform rules and regulations for taxicabs which became effective December 15, 1932. This code is a complete and comprehensive enactment covering the entire subject of licensing taxicabs, rates of fare to be charged, and other regulations concerning taxicabs.

In April, 1933, Local Law No. 31 of the year 1931, which added chapter VIII-A to the Greater New York Charter, was expressly repealed by Local Law No. 4 for the year 1933, which also " revested " the board of aldermen with the powers vested in it prior to 1931 regarding the licensing and regulation of the business of hackman or cabmen, the rates of fares to be charged, and the imposition of annual license fees.

The ordinance, the invalidity of which is herein asserted, was

adopted by the board of aldermen, to take effect October 1, 1933. This ordinance reads in part as follows:

"An Ordinance to amend the Code of Ordinances, in relation to rates of fare for public hacks and to license fees for the operation of taxicabs on streets and over bridges in the City of New York.

" *Be it ordained, by the Board of Aldermen of the City of New York, as follows:*

" Section 1. Subdivision one of section one hundred and two of article eight of chapter fourteen of the Code of Ordinances is hereby amended to read as follows:  *  *  *

" § 2.  *  *  *  *In addition to such fees, the licensee of each taxicab shall pay five cents for each fare collected. Such additional fee shall be paid to such bureau not later than the tenth day of each month for the preceding month. The license of any such licensee shall be revoked forthwith by such commissioner upon failure of any such licensee to pay the additional fee as herein provided.*

" (Such license fee shall be in lieu of, and not in addition to any fees heretofore established, and except.) *Except* as above provided, no charge shall be made. In the case of licenses issued on or after October (1) *first*, in each year hereafter, one-half of the above *initial, and not additional*, fees shall be paid."

The plaintiffs contend that the provisions of article 8 of chapter 14 of the Code of Ordinances were in conflict and inconsistent with those of chapter VIII-A of the charter and that article 8 was, therefore, repealed by virtue of the previously quoted language of section 376 of the charter. The plaintiffs also maintain that even apart from the provisions of section 376, article 8 was merged in chapter VIII-A of the charter and thereby lost its vitality and its separate existence. It is the plaintiff's claim that the subsequent repeal of chapter VIII-A did not have the effect of reviving article 8 in view of the failure to re-enact said article. Reliance is placed upon section 90 of the General Construction Law, which provides that " The repeal hereafter or by this chapter of any provision of a statute, which repeals any provision of a prior statute, does not revive such prior provision " and upon authorities holding that where a statute is merged in a subsequent act the repeal of the latter does not revive the original act. (*People* v. *Wilmerding,* 136 N. Y. 363, 368.) The plaintiffs argue that it is immaterial whether article 8 of chapter 14 of the Code of Ordinances was repealed by or merged in chapter VIII-A of the charter, since, in either event, the repeal of chapter VIII-A could not work a revival of article 8 in the absence of a re-enactment of that article. Accordingly, the plaintiffs assert that the new ordinance is invalid and

void as an abortive attempt to amend non-existent sections of former article 8 of chapter 14 of the Code of Ordinances.

Assuming that article 8 of chapter 14 of the Code of Ordinances was extinguished by subsequent legislation, and that it was never revived, it does not follow that the ordinance passed in September, 1933, which purported to amend sections 102 and 86 of that article, is null and void. (*People ex rel. Strough* v. *Canvassers*, 143 N. Y. 84, 88, 89.)

This ordinance of 1933 is a substantial re-enactment, in amended form, of sections 102 and 86 of article 8 of chapter 14 of the Code of Ordinances. Those sections are " amended to read as follows: " and the wording of the sections as amended is then set forth. Regardless of whether or not the other sections of article 8 of chapter 14 of the Code of Ordinances are still in existence, it is clear that sections 102 and 86 of that article have been re-enacted and that they are, therefore, not invalid as mere amendments of non-existent statutes. *People ex rel. Strough* v. *Canvassers* (*supra*) appears to be conclusive upon the question. The first cause of action in favor of the plaintiff Beacon Transportation Co., Inc., is, therefore, insufficient.

We turn now to the second cause of action, which is predicated upon the proposition that the 1933 ordinance violates section 54 of the Vehicle and Traffic Law (Laws of 1929, chap. 54). The material portion of that section reads as follows: " Except as otherwise provided in this chapter, local authorities shall have no power to pass, enforce or maintain any ordinance, rule or regulation requiring from any owner of a motor vehicle or motorcycle, or from any operator or chauffeur to whom this chapter is applicable, *any tax, fee, license or permit* for the use of the public highways, or excluding any such owner, operator or chauffeur from the free use of such public highways, excepting such driveway, speedway or road as has been or may be expressly set apart by law for the exclusive use of horses and light carriages, or in any other way restricting motor vehicles or motorcycles or their speed upon or use of the public highways; or setting aside for any given time a specified public highway or any part thereof constructed in whole or in part at the expense of the state for speed contests or races or other sports, exhibitions, shows, exercises, entertainments or meetings; *and no ordinance, rule or regulation contrary to or in anywise inconsistent with the provisions of this chapter, now in force or hereafter enacted shall have any effect; provided, however, that the power given to local authorities to license and regulate vehicles offered to the public for hire,* and processions, assemblages or parades in the streets or public places, *and all ordinances, rules and regulations which*

*may have been or which may be enacted in pursuance of such powers shall remain in full force and effect."* (Italics ours.)

In view of the express prohibition in the statute against the imposition by local authorities of taxes upon owners or operators of motor vehicles, the legality of the ordinance depends upon whether the charge of five cents for each fare collected is in reality a tax or a license. The distinction between a license and a tax is very aptly stated in the opinion of Judge CHASE, writing for the Court of Appeals, in *City of Buffalo* v. *Lewis* (192 N. Y. 193, 202): " The distinction between a license or license tax as a police regulation, and a tax for raising revenue is in the fact that one is intended for regulation and the other for revenue." (See, also, *City of Buffalo* v. *Hill*, 79 App. Div. 402; *People* v. *Jarvis*, 19 id. 466.)

In Dillon on Municipal Corporations (5th ed.) we find the following statement of the law (pp. 995, 996): " *Concerning useful trades and employments*, a distinction is to be observed between the power to ' license ' and the power to ' tax.' In such cases the former right, unless such appears to have been the legislative intent, does not give the authority to prohibit, or to use the license as a mode of taxation with a view to revenue, but a reasonable fee for the license and the labor attending its issue may be charged."

At pages 2461 and 2462 of the same work the distinction between a tax and a license is pointed out in somewhat different language: " The *taxing power* is to be distinguished from the *police power*, the general nature of which has been before adverted to. The power to license and regulate particular branches of business or specified matters is usually a police power; but when license fees or exactions are plainly imposed for the sole or main purpose of revenue, they are, in effect, taxes. * * * Ordinarily, the mere power to license or to subject to police regulations, does not give the power to tax distinctly for revenue purposes."

In 1 Cooley on Taxation (4th ed.) the differentiation between a tax and a license fee is expressed as follows (pp. 95–99): " The distinction between a demand of money under the police power and one made under the power to tax is not so much one of form as of substance. The proceedings may be the same in the two cases, although the purpose is essentially different. The one is made for regulation and the other for revenue. If for regulation, it is an exercise of the police power while if for revenue it is an exercise of the taxing power. If, therefore, the purpose is evident in any particular instance, there can be no difficulty in classifying the case and referring it to the proper power. * * * For instance, a reasonable inspection fee, where the occupation or act is of such a character as to require a certain amount of inspection to protect

the public morals, health or safety, to pay the expenses of inspection, is not a tax but an exercise of the police power, and the same is true as to fees for the cost of examination of persons engaged in certain occupation, to determine their fitness. But a charge of a fixed sum which bears no relation to the cost of inspection and which is payable into the general revenue of the state is a tax rather than an exercise of the police power. Whether an imposition is called a license ' fee ' or a license ' tax ' is worthy of little consideration, since its real nature is the test. * * * If revenue is the primary purpose, the imposition is a tax."

The complaint here alleges that the committee on general welfare of the board of aldermen on September 14, 1933, in regularly reporting out the proposed ordinance for consideration by the board of aldermen, stated: " The ordinance is a revenue producing measure," and that it was adopted by the board of aldermen on the same day.

Even apart from this allegation, it is clear that the charge of five cents for each fare collected was intended for the purpose of producing revenue and not for the purpose of regulation. The amount and nature of the charge is in itself strong evidence of that fact. (See *People* v. *Jarvis, supra.*)

There is no escape from the conclusion that the fee of five cents for each fare collected, though denominated a " license fee," is in reality a tax. The ordinance accordingly violates the prohibition against taxation by local authorities, contained in section 54 of the Vehicle and Traffic Law and is illegal, null and void.

The recent statute passed at an Extraordinary Session of the Legislature for the purpose of temporarily enabling a city having a population of one million inhabitants or more " to adopt and amend local laws imposing in any such city any tax which the Legislature has or would have power and authority to impose " (Laws of 1933, chap. 815), does not apply to the ordinance under consideration. That statute provides that a local law adopted pursuant to its provisions " shall provide that all revenues collected thereunder shall be paid into a special fund to be established by the chief fiscal officer of any such city and shall be used exclusively for the following purposes:

" (a) To defray the cost of granting unemployment home and work relief, and

" (b) To defray the annual cost of the interest on certificates of indebtedness issued in the first instance to obtain funds necessary to provide unemployment home and work relief, and to redeem such certificates of indebtedness."

The ordinance imposing the charge of five cents for each fare

collected fails to contain the provision above quoted. Moreover, chapter 815 provides that the local laws enacted pursuant thereto shall be effective only during the period commencing September 1, 1933, and ending February 28, 1934, or any portion of such period. The taxicab ordinance contains no such limitation. It apparently was not enacted pursuant to chapter 815, but rather on the theory that the city had the right to enact it as a license fee rather than a tax without regard to the provisions of chapter 815.

Although an allegation in the complaint that the defendants have threatened to commit any acts prejudicial to the plaintiffs is desirable, it is not essential, as the natural inference is that the defendants will attempt to enforce the ordinance and that they will impose the penalty therein provided for in the event that the plaintiff Beacon Transportation Co., Inc., fails to make the payments required by the ordinance. The latter need not wait until attempts are made actually to enforce the ordinance. A good cause of action for injunctive relief against the enforcement of the ordinance is set forth.

There remains for consideration the third cause of action. Paragraph 28 alleges that the ordinance is discriminatory, void and illegal because it " purports to require licensees obtaining licenses from January 1 to September 30 of each year to pay additional as well as initial fees, and specifically provides that licensees obtaining licenses from October 1 to December 31 of each year pay solely a portion of the initial fee, but do not pay any additional fee whatsoever."

The contention thus made is based upon a misinterpretation of the language of the ordinance. The last sentence of section 2 of the ordinance was not intended to exempt those obtaining licenses after October first in each year from the obligation to pay a fee of five cents for each fare collected. That obligation applies to all licensees regardless of the dates of issuance of their respective licenses. The sentence referred to was intended merely to govern the amount of *initial*, as distinguished from additional, license fees paid by those obtaining licenses after October first of each year. The reason for the smaller charge was obviously the fact that licenses are issued for a period beginning April first and expiring March thirty-first of each year. October first marks the end of the first half year of the license period. A person obtaining a license after October first would enjoy its use for less than a half year and, undoubtedly, the board of aldermen had this in mind when it provided for the payment of half the ordinary initial license fee in the case of licenses issued after October first of any year.

Paragraph 29 (which is also part of the third cause of action)

alleges that the ordinance is unconstitutional, discriminatory, illegal and void in that it imposes the fee of five cents for each fare collected solely upon licensees of taxicabs and is not made to apply to licensees of other vehicles offered to the public for hire.

It is well established that " in determining the purpose or promises upon which an ordinance shall be operative a municipality is not bound to adopt a strictly scientific classification or one which courts or social economists or other critics might deem the wisest or the best suited to the conditions to be met." (*Waldorf-Astoria Hotel Co.* v. *City of New York*, 212 N. Y. 97, 107; *People ex rel. Pratt* v. *Goldfogle*, 242 id. 277, 294; *Matter of Keeney*, 194 id. 281, 286; *West* v. *Asbury Park*, 89 N. J. L. 402).

In Cooley on Taxation ([4th ed.] pp. 786–788) the following statement is made: " Vehicles may be made a separate class for a license fee or tax. Furthermore, different kinds of vehicles may be separately classified for the purpose of a license fee or tax or an occupation tax. * * * Jitney busses may be made a separate class for a license tax, and motor busses may be classified separately from ' rent cars.' A higher fee on motor or jitney busses is valid, and the license fee on jitney busses may be much higher than on taxicabs."

Applying the principle of these authorities to the case at bar, the classification adopted by the board of aldermen is not arbitrary and " devoid of reasonable ground on which to rest." It is similar to those classifications which have been previously upheld as proper by our Court of Appeals. The third cause of action I hold is, therefore, insufficient.

The motion is granted to the extent of dismissing the first and third causes of action and dismissing the second cause of action as to the plaintiffs United Taxicab Board of Trade, Inc., and Fannie Levine. In so far as it is sought to dismiss the second cause of action as to the plaintiff Beacon Transportation Co., Inc., the motion is denied. An amended complaint may be served within ten days from the service of a copy of this order, with notice of entry, upon payment of ten dollars costs.