GOLDSTEIN v. CITY OF HAMTRAMCK.

1. MUNICIPAL CORPORATIONS—ORDINANCES—HAWKERS AND PEDDLERS —NONRESIDENTS—CONSTITUTIONAL LAW.
    A provision in an ordinance of the city of Hamtramck, requiring all hawkers and peddlers in said city to be residents thereof, and restricting the granting of licenses thereunder to said residents, is void, being in violation of the constitutional rights of nonresidents.

2. SAME—HOME-RULE CHARTERS SUBJECT TO CONSTITUTION.
    That authority to enact said ordinance was conferred by a so-called "home-rule" charter, does not make it valid, since the amendment to the Constitution authorizing said legislation expressly subjects it to the Constitution and general laws of this State.

Appeal from Wayne; Dunham (Major L.), J., presiding. Submitted May 2, 1924. (Docket No. 111.) Decided June 2, 1924.

Bill by Charles Goldstein against the city of Hamtramck and others to enjoin the enforcement of an ordinance. From a decree for plaintiff, defendants appeal. Affirmed.

On the question of discrimination against nonresidents by statute or ordinance as to license, see note in 40 L. R. A. (N. S.) 286, 289.

*William Cohen,* for plaintiff.

*Ignatius J. Salliotte,* for defendants.

STEERE, J.  Defendants appeal from a decree in plaintiff's favor by the Wayne county circuit court holding invalid a provision of an ordinance of the city of Hamtramck requiring all hawkers and peddlers within its limits to be residents.   The case was heard on bill and answer and no disputed facts are involved. Section 1 of the ordinance forbids any person following that pursuit within the city without first securing a license from the city clerk.   Section 2, containing the provision in controversy, provides:

"The clerk of the city of Hamtramck is hereby authorized to license any person or persons of good character, who is a resident in said city for at least 60 days prior to the application for such license, and who shall desire to follow or engage in the business or occupation of a hawker or peddler in said city upon the payment by said person and each of them the sum prescribed in the next succeeding section of this ordinance and the execution of a bond to the city of Hamtramck in the penal sum of two hundred dollars ($200) with one or more sureties satisfactory to the city council of said city, conditioned," etc.

Undisputed allegations in plaintiff's bill state that he is a resident of the city of Detroit and has been engaged for the past two years in the business of a huckster and fruit and vegetable peddler in the city of Hamtramck; that he has there worked up a large route with steady customers which by reason of his acquired acquaintance and efforts has a value of no less than $2,000; that he is solely dependent upon said business for his livelihood and if deprived of it will suffer irreparable damage; that while so engaged he has operated under a license issued him pursuant to an ordinance of said city, and complied with all its requirements; that an agitation by certain resident

hawkers and peddlers of Hamtramck resulted in the passage of the ordinance in controversy here, and under advice of his counsel he applied to the city clerk for a license, on April 26, 1923, tendering the required bond and $25 license fee prescribed by the new ordinance, requesting a license for the ensuing year, but said clerk declined to issue him a license as before, on the sole ground that he was not a resident of the city of Hamtramck.   He thereafter continued the business of huckster and peddler in said city until he was arrested, tried and found guilty of violating said ordinance, and fined the prescribed penalty of $50 with $5 costs, which conviction he has appealed to the circuit court of Wayne county; that he has been threatened by the police officials of the city that if he attempts to carry on his former business in Hamtramck they will arrest and prosecute him therefor.

The bill prays for an injunction and decree declaring said ordinance invalid.

It is admitted that the only reason claimed for refusing plaintiff a license was that he did not reside in the city of Hamtramck, and the sole question involved is the validity of the provision in the ordinance respecting the granting licenses to residents of the city only.

Defendants cite as controlling *Hughes* v. *City of Detroit,* 217 Mich. 567, in which this court sustained on the issues raised against it an ordinance of the city of Detroit somewhat similar to the one involved here, which contains a provision authorizing the issuance of licenses to residents of the city of Detroit who comply with its other provisions.   In that case plaintiffs were not nonresidents of the city and had not been refused a license, but on the contrary stressed the fact that they were and had been for from two to thirty years and upwards residents of the city of Detroit.   Their rights were in no way affected by the provision complained of here.   Their grievance was

not that a license was refused them but that they were required to get one, and they attacked the ordinance, asking that it be held a nullity, void *in toto* and of no force and effect for eleven reasons stated in their bill of complaint as follows:

"A. That the provision of said ordinance requiring your plaintiffs to undergo physical examination before engaging in said business is class legislation in that your plaintiffs' competitors handling and selling the same commodities as your plaintiffs are not subject to any such regulation.

"B. The license fee provided is excessive and beyond any reasonable amount that might be required as license fees.

"C. That it provides for a graded fee from one to twenty-five dollars when the cost of issuing the license and the regulation of the business is the same as to all excepting only the cost of license plates attached to vehicles.

"D. That the fees provided for is a tax upon your plaintiffs' business.

"E. That the provision requiring your plaintiffs to keep their photographs on file in the bureau of markets is arbitrary and unreasonable and does not tend in any degree towards the prevention of offenses or the preservation of the public health, morals, safety or welfare and is class legislation in that your plaintiffs' competitors handling and selling the same commodities are not subject to any such regulation.

"F. That the provision limiting the number of help is in restraint of trade and an unnecessary and unreasonable regulation of your plaintiffs' business.

"G. That the common council is without authority to delegate its power to regulate to any other board or body.

"H. That the first amendment to said ordinance repealed all of said ordinance except such as re-enacted in said amendment.

"I. That the second amendment repealed all of said first amendment except such as was re-enacted in said second amendment.

"J. That said second amendment is void in itself in that it does not amend the ordinance specified in the title thereof.

"K. That the enactment of the said ordinance and its amendments is an exercise of arbitrary and unauthorized class legislation for the benefit of competitors of your plaintiffs and an unjust discrimination against your plaintiffs and their said business in favor of your plaintiffs' competitors."

This court held the Detroit ordinance was not fundamentally bad and void *in toto* for those reasons, saying in conclusion:

"No concrete case involving any administrative feature of the ordinance is before us. The construction of some particular provision as applied to a particular person or condition not vital to the validity of the ordinance is not for determination in this proceeding."

The particular provision discriminating against nonresidents had no application to plaintiffs in that case, was not included in the reasons alleged in their bill against the validity of that ordinance and the court had no occasion to pass upon it. The scheme of that ordinance within its legitimate field of police regulations for protection of the public peace, health and safety was complete in itself, and a workable, enforceable ordinance remained with the separable discriminating provision against nonresidents eliminated. In such case the valid provisions of an ordinance may be sustained and given their appropriate effect. An ordinance may be good in part and bad in part. McQuillin on Municipal Ordinances, p. 449; *People* v. *Armstrong,* 73 Mich. 288 (2 L. R. A. 721, 16 Am. St. Rep. 578); *City of Detroit* v. *Railway Co.,* 95 Mich. 456 (20 L. R. A. 79, 35 Am. St. Rep. 580). The rules for construction of ordinances are the same as for statutes. *In re Yick Wo,* 68 Cal. 294 (9 Pac. 139, 58 Am. Rep. 12); 28 Cyc. p. 388. Here plaintiff sought in continuation of his business at the expiration of a former license to obtain another, made tender of the license fee and of full compliance

with all the requirements of the ordinance in question within the legitimate field of police regulations, and was refused on the sole ground that he was not a resident of the city.

The only question raised or involved in this case, as stated in the brief of plaintiff's counsel, "is the constitutionality of the provision in the ordinance of the city of Hamtramck regulating hawking and peddling therein restricting the granting of the license thereunder to residents of said city," its invalidity being urged on the single ground that it violates the constitutional rights of plaintiff in discriminating against nonresidents.    That such a provision in a city ordinance of this kind cannot be justified as an exercise of police power is text-book law.    In 25 Cyc. p. 610, discussing discrimination against nonresidents, the rule and reason for it is summed up as follows:

"Except in the case of foreign corporations which are not regarded as citizens in a constitutional sense, an act or ordinance which taxes the business or occupation of a nonresident in a different manner or at a different rate from that of a resident violates the constitutional provision that 'citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States.'    And the rule that nonresidents must not be discriminated against applies even where the discrimination operates only within the limits of a municipality."

Amongst the numerous authorities in support of the concluding portion of the text are *Brooks* v. *Mangan,* 86 Mich. 576 (24 Am. St. Rep. 137) ; *City of Saginaw* v. *Saginaw Circuit Judge,* 106 Mich. 32, which are in harmony with that proposition and long ago settled the question in this State.

It is further urged that the subsequent amendment of our Constitution and the supplemental so-called "home-rule act" conferring upon cities authority to enact their own charters, gave them increased police power and legislative control over their local affairs

which authorized the residential restriction complained of. We find no force in this contention. The provision of the Constitution giving cities and villages increased autonomous power in matters of strictly local concern at the same time distinctly made the authorized amendment or adoption of their charters, and adoption of laws and ordinances relating to their municipal affairs, "subject to the Constitution and general laws of this State." It certainly did not, and could not, enlarge the limit of their legislative powers under the Federal Constitution.

The provision in the ordinance discriminating in favor of residents as against nonresidents is in violation of constitutional prohibition, and invalid.

The decree of the lower court so holding is affirmed, with costs to plaintiff.

CLARK, C. J., and MCDONALD, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.