## TOWER REALTY, Inc. v. CITY OF EAST DETROIT.

### No. 11408.

United States Court of Appeals
Sixth Circuit.

April 18, 1952.

Wm. Henry Gallagher, Detroit, Mich.
(Wm. Henry Gallagher, Detroit, Mich:,

George A. Francis, East Detroit, Mich., on the brief), for appellant.

Carl B. Weymouth, East Detroit, Mich., on the brief, for appellee.

Before ALLEN, McALLISTER, and MILLER, Circuit Judges.

McALLISTER, Circuit Judge.

The controversy involved in this case has had a long and varied career. It has been, on three occasions, before the state circuit courts of Michigan; twice before the Michigan Supreme Court; twice before the district court; and this is its second appearance in this court. Before us, for our consideration of the issues, we have four separate records and twelve briefs that depict the progress of the case through its various adjudications.

With respect to the issues now before us, appellant filed a petition in the district court for a declaratory judgment, asking the court to declare void certain provisions of an ordinance of the City of East Detroit, Michigan, and to declare and determine that appellant, upon compliance with the valid provisions of such ordinance, was entitled to the issuance by the City of a license to operate an amusement park on certain real estate on the corner of Eight Mile Road and Gratiot Avenue. The district court held that appellant, under Rule 17 of the Federal Rules of Civil Procedure, 28 U.S.C.A., was not the real party in interest in the action, and entered an order denying the petition and dismissing the complaint, from which order, Tower Realty, Inc. appeals.

The background of the case is as follows: The real estate in question is owned by Flora Kerner. She leased the property for purposes of an amusement park to the Eastwood Park Amusement Company, a corporation owned by Max Kerner and Henry Wagner—each being a holder of 50% of the stock. Max Kerner was the husband of Flora Kerner, the owner of the real estate.

In 1947, Max Kerner and Henry Wagner pleaded guilty to a charge of permitting gambling in the park and paid fines for such law violation. Thereafter, early in 1948, a yearly license to operate the park was issued to the Eastwood Park Amusement Company. These yearly licenses had been issued to the company for each year during the twenty years prior to 1948. However, in May, 1948, the city officials raided the park and seized a number of chance games; and the mayor thereafter proceeded to revoke the company's license to operate the park, pursuant to an ordinance which provided:

"Section 18. The Council may refuse to issue licenses to the parties, and for the purposes aforesaid, and the Mayor may revoke any license all ready issued, for good satisfactory reasons which shall be reported to the City Council by the Mayor at its first session following such refusal or revocation, that any party aggrieved by the action of the Mayor in revoking a license may appeal to the City Council, and upon due consideration by said City Council, the action of the Mayor may be reversed, and the license or its revocation annulled upon a three-fourth vote of all of the Council elected."

Upon this revocation of the license, the Eastwood Park Amusement Company brought injunctive proceedings in the state circuit court to restrain the enforcement of such revocation, on the ground that Section 18 of the ordinance above quoted was unconstitutional in that it provided no standard of fitness, and, instead, conferred arbitrary power upon the mayor to revoke any license. It was further contended that since such provision was void, and was the only one prescribing procedure for revocation of licenses, the ordinance was left without any basis for such revocation by any official or body. On the hearing, the circuit court dismissed the bill and the company thereafter appealed to the Supreme Court.

In its decision, the Supreme Court held that Section 18 of the ordinance was unconstitutional. The court, however, held that under Sections 16, 19, and 21 of the ordinance,[1] revocation would be justified.

---

1. Sections 16, 19, and 21 of the ordinance read as follows:

"Section 16. No person or company receiving a license under this ordinance

However, it was declared that the company was entitled to a notice of revocation, setting forth the specific claimed violations of Section 16, as well as notice that the City was proceeding to revoke the license in accordance with Section 21; and that if, after such notice, the company were given a hearing, it would satisfy the due process to which it was entitled. The court, therefore, modified the decree of dismissal of the circuit court, in accordance with the foregoing determination. Eastwood Park Amusement Co. v. Mayor, 325 Mich. 60, 38 N.W.2d 77.

Prior to this decision of the Supreme Court, the Eastwood Company had again applied for a license for the year 1949, and because the matter was still pending in the court, the city council failed to act upon the application. Before the Supreme Court decided the case then pending, the company filed a complaint in the nature of mandamus in the state circuit court. Thereafter, the decision of the Michigan Supreme Court was announced, and the company subsequently amended its pleadings so as to attack the constitutionality of Sections 16 and 19 of the ordinance. In its complaint, it prayed that an injunction issue restraining the city officials from interfering with its operation of the park; that the ordinance, in so far as it related to the company, be declared unconstitutional; and

that, in the alternative, a mandatory injunction issue requiring the grant of a license to the company, in accord with its application therefor. The circuit court dismissed the complaint; and the company again appealed to the Supreme Court.

On the second appeal, the Supreme Court of Michigan again decided the case against the Eastwood Company. It held that the operation of gambling devices in the amusement park, which constituted grounds for revocation by the city of the license to operate during the years when such devices were permitted, constituted sufficient grounds for refusal of a license for the succeeding year; that the ordinance which provided that no license be issued unless the place complied with all laws and ordinances provided a standard as a basis for determining whether or not a license should be issued by the city officials, and hence, was not unconstitutional for lack of a standard for the issuance of a license; and that the ordinance, which contained sufficient valid provisions to leave it complete and operative, must, to that extent, be permitted to stand. The court further held that the ordinance in question contained the following severable provisions that were complete and operable in themselves and were, therefore, valid and enforceable: (1) the requirement of a license as a prerequisite to the operation of an amusement

shall permit any disorderly conduct, gambling or any game of chance or the use of any immoral, profane or indecent language, or permit the sale, giving away, delivering, drinking or use therein of any kind of beer, wine, malt or intoxicating liquor, or beverage or any kind of beer, wine, malt or, providing beer and liquor may be sold if otherwise authorized by the City Council by the granting of a liquor license or permit such place of amusement or exhibition to become and be a place of resort of thieves, prostitutes or other disorderly persons."

"Section 19. Requirements: No such license shall be issued unless such place for which it is issued complies with all laws and ordinances and with all rules and regulations of the Building Department, the Police Department and the Board of Health and in the opinion of the Mayor is a safe and proper place to be used as an amusement park or concession stand, and the consent of the neigh-

borhood as required in the following section has been secured. Consent of Neighborhood Required: No amusement park shall hereafter be established or maintained within the City of East Detroit, unless a petition shall theretofore be filed with the Council for at least ten days, signed by 50% of the persons owning property within a radius of 5280 feet of the premises upon which it is desired to establish the amusement park."

"Section 21. Any violation of this ordinance shall be cause for any revocation of any license issued, and shall be punished by a fine not to exceed the sum of $100.00 and by imprisonment in the City Jail or the County Jail for a period not exceeding 90 days, or either, in the discretion of the Court, and in the imposition of a fine only, the Court may make a further sentence that the offender be imprisoned until such fine is paid, but for a period not exceeding that provided herein."

park; (2) the provision forbidding licensees to permit gambling or other evils upon the licensed premises; (3) the provisions for revocation of a license and penalties for violation of the ordinance; and (4) the provisions for refusal of a license on the ground of violation of state laws and ordinances. In deciding the case, the court said that in view of the foregoing provisions, it was unnecessary to pass upon claims of the unconstitutionality of other provisions of the ordinance. With respect to the contention that the criminal violation of the laws by former owners and officers of the company could not be urged against the issuance of a license for a succeeding year since the company had, in the meantime, come under new ownership and management, the court declined to consider such claims on the ground that they had not been raised in the lower court or embodied in appellant's statement of reasons and grounds for appeal, as required by Rule 67 of the Michigan Court Rules. The court, accordingly, affirmed the decree dismissing the complaint. Eastwood Park Amusement Co. v. City of East Detroit, 328 Mich. 272, 43 N.W.2d 851.

After the first appeal of the Eastwood Company had been decided in the Supreme Court, and during the pendency of Eastwood's second appeal, Tower Realty, Inc., appellant herein, on February 3, 1950, filed an application with the city for a license to operate the amusement park. At that time, Tower had no interest or lease of the park. It was not until February 28, 1950, that Eastwood executed a lease of its interest in the amusement park to Tower. The application by Tower for a license was denied by the city on March 13, 1950.

On March 13, 1950, Tower filed its complaint in the instant case in the United States District Court.

On April 28, 1950, Eastwood again filed an application with the city for a license to operate the amusement park, which it had theretofore, on February 28, 1950, leased to Tower. This latter application of Eastwood was not acted upon by the city.

Thereafter, the Supreme Court decided against the Eastwood Company on its second appeal.

To summarize the above proceedings, then, during the period while there was pending the first appeal of the Eastwood Company from denial of a license to operate the park, Tower filed an application for a license to operate the same park, although at that time it had no lease of or interest in the park. Thereafter, although Eastwood's second appeal was still pending in the Michigan Supreme Court, Eastwood executed a lease of its interest in the park to Tower. Subsequently, Tower filed its complaint in the instant case in the district court. It asserted jurisdiction in the court on grounds of diversity of citizenship, as well as the due process clause of the Federal Constitution, and asked the court to declare the pertinent sections of the ordinance void, and, further, to declare that Tower was entitled to the issuance of a license. Thereafter, pending Tower's suit in the district court, Eastwood again applied to the City for a license to operate the park, although it had previously leased its interest in the park to Tower, and Tower had not executed a lease therefor back to Eastwood.

When the present action brought by Tower Realty, Inc., came on for hearing in the district court, for a declaratory judgment to declare certain of the sections of the ordinance unconstitutional and to determine that upon compliance with the valid provisions, the Tower Company would be entitled to operate the amusement park, the court assumed jurisdiction, but dismissed the complaint on the ground that the constitutional questions asserted therein were involved in the state court proceedings which, at that time, in May 1950, had not been terminated, the final decision of the Supreme Court of Michigan not having been entered until September, 1950. The district court, in its order of dismissal, indicated that if the decision in the Michigan Supreme Court proceedings, then pending, were adverse to Tower, it could later seek review as permitted by Title 28 U.S.C.A. § 1257, providing for appeal to the United States Supreme Court. It was stated by counsel for Tower, however, that Tower could make no such appeal as it was not the party plaintiff in the case, that party being the Eastwood Company.

The above decision of the district court was appealed to this court, and on review, it was stated that we had the duty of considering the jurisdiction of the district court in cases involving diversity of citizenship; that where a plaintiff is a newly created corporation, the motive for the creation of the new corporation is not conclusive on the question of jurisdiction based on diversity of citizenship, but the reality of the new corporation is, and that it must be determined, accordingly, whether such plaintiff is the real party in interest; that the record on appeal was insufficient to show the interest of the plaintiff corporation in the amusement park; and because this court was not able to determine the question of jurisdiction from the record, the case was remanded for the taking of evidence on that point. It was further held that if Tower Realty, Inc. were the real party in interest, then, in considering the validity of a city ordinance claimed to be contrary to the Federal Constitution, the controlling question for the district court to determine was whether the Federal Constitution had been invaded by such ordinance. Tower Realty Co. v. City of East Detroit, Mich., 6 Cir., 185 F.2d 590.

On the former appeal, as appears from the foregoing, this court was concerned primarily with the question whether the district court had jurisdiction; and appellant placed its emphasis, in this respect, upon the ground that it was a foreign corporation, and that the district court, therefore, had jurisdiction because of diversity of citizenship.

The Eastwood Company, as above remarked, had been convicted of law violations; and in two opinions of the Michigan Supreme Court, revocation, as well as denial of an application by such company for a license to operate the amusement park, was upheld because of that fact. However, Tower Realty, Inc. claimed to be Eastwood's lessee of the park and of all of its facilities. It insisted that, as a new company, it had been guilty of no law violations, and that it was, therefore, in its own right, entitled to a license to operate the park.

Because of Tower's contention that it was completely disassociated from Eastwood, and, therefore, innocent of any law violations of which Eastwood had been guilty; that, as a new and different corporation, it was not bound by the decisions of the Michigan Supreme Court in the two Eastwood cases upholding a denial of a license because of prior law violations; that Tower had acquired the lease of the park and all of its facilities from Eastwood; that the district court, because of Tower's foreign incorporation, had jurisdiction on the ground of diversity of citizenship; and, chiefly, because this court, on the first appeal, had nothing in the way of a record before it except the pleadings in the case, we were of the opinion that the facts with respect to the incorporation of appellant company in a foreign state, and its interest in the subject matter of the litigation, should be inquired into in order to determine whether it was the real party in interest under Rule 17 of the Federal Rules of Civil Procedure. The case was, therefore, remanded to the district court for the purpose of taking testimony and ascertaining from the evidence, as the first issue to be determined, whether appellant was the real party in interest.

When, on remand, the case came on for hearing before the district court, the evidence which was then introduced persuaded the court to findings adverse to the appellant. The lease transactions between Eastwood and Tower Realty, Inc., with their shadowy and insubstantial considerations; the fact that members of the same families were owners of the stock of both companies; that one company, without any concern or consideration, readily forgave obligations arising out of the lease agreement, amounting to thousands of dollars owing to it by the other company, giving to their contractual relations a fictitious aspect; the nature of the stock ownership in Tower Realty, Inc., with its attendant uncertainty as to its real owners, or what the amount of the invested capital actually was, or what property it possessed; the fact that both companies simultaneously were making application for a license to

operate the same park; and the testimony of the owner of the amusement park who, under examination by her counsel, stated that the reason it was decided to incorporate the Tower Company in a foreign state was to enable it to sue in a federal court as a foreign corporation, presumably to attack the license provisions in the ordinance, combined to convince the district court that the transaction entered into between Tower Realty, Inc., and the Eastwood Company was a mere circumvention in order to make it appear that a transfer of assets had occurred when such was not the fact; that title to the assets was only a matter of opportunity and convenience; that there was no reality in the lease transactions; and that Tower Realty, Inc. was not the real party in interest. The district court, accordingly, dismissed the case.

With the entire record presently before us, including the testimony of the witnesses and the evidence of the contractual relations upon which Tower Realty, Inc. relies, it is now clear, however, that counsel for Tower Realty, Inc., in addition to his reliance on diversity of citizenship as a ground of federal jurisdiction, asserted and now asserts that the district court had jurisdiction also because the provisions of the ordinance were unconstitutional in denying due process of law to which a company was entitled under the Federal Constitution. Under this aspect of the case, and under the evidence now before the court, it is unnecessary to consider the question of diversity of citizenship and the progeny of other issues which that question was thought to embrace, including, as hereinafter appears, the determination whether appellant was the real party in interest.

■■ A question which has caused considerable concern to the court is whether it was necessary for appellant, as an applicant for a license to operate the amusement park, to show any interest in the leasehold rights of such park or the facilities thereon situated. There is, however, nothing in the ordinance in question which requires that an applicant for a license for an amusement park hold title by fee, a lease for a term of years, or otherwise; and in the absence of such a requirement in the ordinance itself, it is our conclusion that no showing of any such interest need be made by an applicant for a license. On the issue of jurisdiction, it, therefore, now appears that it is not necessary in the case for Tower Realty, Inc., to show, in making its application for a license to operate the amusement park, that it was or is possessed of any facilities, property, or lease rights, obtained from the Eastwood Company. The fact that it does not possess such interests does not prevent it from maintaining its action on the ground that it is not the real party in interest. Being properly before the court as a party plaintiff, under the pleadings and proofs in the case, appellant submits that there is presented for adjudication the validity of the ordinance which it assails as being unconstitutional in denying due process of law under the Federal Constitution.

We are confronted at the outset, however, with the fact that the Michigan Supreme Court, in Eastwood Park Amusement Co. v. City of East Detroit, 328 Mich. 272, 43 N.W.2d 851 has already determined that Section 19, the principal provision of the ordinance under attack, is constitutional. It is to be said that the City, in denying the Tower Company's application for a license to operate the amusement park, did not base its rejection upon the specific ground that the place, "in the opinion of the mayor," was not "a safe and proper place to be used as an amusement park," as provided in Section 19. What actually took place was that the council revoked Eastwood's license, and thereafter refused to issue Eastwood a new license; and that these proceedings were upheld by the Michigan Supreme Court on the ground that under Section 19, such action was justified. Subsequently, when Tower filed application for the issuance of a license, no action was taken on its application at any of several council meetings up to the time of the filing of the complaint. It was afterward denied. The contention here made that Section 19 of the ordinance is unconstitutional has heretofore been decided adversely to appellant's contention in both Eastwood Park Amusement Co. v. Mayor, 325 Mich. 60, 38 N.W.2d 77, and Eastwood Park Amusement

Co. v. City of East Detroit, 328 Mich. 272, 43 N.W.2d 851, and it is claimed by appellee that those decisions are binding upon us in this case, since no appeal was taken to the United States Supreme Court. However, as to the first of the above cases, appellant submitted that, since the constitutionality of Section 19 of the ordinance was not raised in that case, any language with respect thereto in the court's opinion, was dicta. Furthermore, in answer to appellee's contention that an appeal would lie in that case from the decision of the Michigan Supreme Court to the Supreme Court of the United States upon the constitutional issue involved, and that such appeal was not taken, Tower Realty, Inc., appellant herein, points out that it was not a party to that suit, the Eastwood Park Amusement Company having been the appellant therein, and, accordingly, the Tower Company had no right to appeal from that decision.

With respect to the second of the above cases decided by the Michigan Supreme Court, it is here contended by Tower Realty, Inc. that the Michigan Supreme Court, in its opinion, misquoted the section of the ordinance in question, and, in fact, did not pass upon that part of the ordinance which provided that no license should be issued unless the place, "in the opinion of the mayor is a safe and proper place to be used as an amusement park"; and appellant submits that the court's statement that no conferring of arbitrary power upon the mayor is to be found in Section 19, ignores the language of the ordinance and can not be accepted by us as authoritative on the constitutional issue. The Michigan Supreme Court, nevertheless, denied a motion for rehearing in that case, which was based upon the claimed misquotation of the ordinance.

◼ Under the foregoing circumstances, we may assume that one of the reasons why the council refused the issuance to the Tower Company of a license to operate the amusement park was because, under Section 19 of the ordinance, the mayor has considered that the place in question was not safe and proper to be used as an amusement park, and under this assumption, the constitutional validity of that section of the ordinance is before us. Certainly, Section 19 has been in issue before the Michigan Supreme Court, as appears in its decisions in the two Eastwood cases heretofore referred to. The principal issue which appellant seeks to have this court determine is the constitutionality of this section of the ordinance; and it is because of the circumstances and contentions of appellant with respect to the decisions of the Michigan Supreme Court, as above mentioned, as well as its contentions advanced in this case that, in spite of the fact that the common council did not reject appellant's application for a license, specifically, on the basis of Section 19 of the ordinance, we proceed to an independent determination as to whether that section is constitutional.

Section 19 provides as follows:

"Section 19. Requirements: No such license shall be issued unless such place for which it is issued complies with all laws and ordinances and with all rules and regulations of the building department, the police department and the board of health and in the opinion of the mayor is a safe and proper place to be used as an amusement park or concession stand, and the consent of the neighborhood as required in the following section has been secured. Consent of neighborhood required: No amusement park shall hereafter be established or maintained within the city of East Detroit, unless a petition shall theretofore be filed with the council for at least 10 days, signed by 50 per cent. of the persons owning property within a radius of 5,280 feet of the premises upon which it is desired to establish the amusement park."

It is contended, first, that the above section is unconstitutional in that it confers upon the mayor an arbitrary power to refuse a license and we address ourselves to that issue.

◼ In discussing the authorities hereafter, it is to be observed that some of them are concerned with ordinances, others, with statutes. The same rule of construction, however, as to validity applies to both ordinances and statutes, as well as the same

presumptions. With regard to the presumption of constitutionality, the rule applicable to ordinances of a city government is the same as that applied to statutes passed by the legislature. See Goldstein v. City of Hamtramck, 227 Mich. 263, 198 N.W. 962. A statute or ordinance will be presumed to be constitutional by the courts unless the contrary clearly appears; and in case of doubt, every possible presumption not clearly inconsistent with the langauge and the subject matter is to be made in favor of the constitutionality of legislation. See Cady v. City of Detroit, 289 Mich. 499, 286 N.W. 805.

We proceed, then, to a consideration of the cases involving the constitutionality of ordinances somewhat similar to the one here before us. In Melconian v. City of Grand Rapids, 218 Mich. 397, 188 N.W. 521, 523, in a case which was concerned with licenses for taxicabs, the court observed that the nature of the business was such that its reasonable control necessitated the exercise of a wise discretion in declaring who should be permitted to engage in it. The ordinance in that case provided that in order to secure a license to operate a taxicab, the application therefor be considered by the city commission, and that *if, in its opinion, "the person making the application is a proper person,* both by experience and character, they may authorize the granting of a license, * * *." An applicant who had been refused a license attacked this provision on the ground that it was invalid because it was an attempt "to confer upon the city commission the arbitrary power to grant or refuse a license, according to its whim or caprice." The section of the ordinance lodging in the city commission the discretion as to who was "a proper person" was, however, held to be valid.

The court, in determining the issue before it, observed that when an ordinance affected private rights, it was held, as a general rule, that the requirement for obtaining a license must be so specifically pointed out in the ordinance as to permit all applicants who complied therewith to secure a license as a matter of right, and that an arbitrary discretion to grant or refuse may not be conferred. The court went on to say: "In cases where the public health or safety is involved, this rule has been relaxed and a provision conferring discretionary power has been sustained. [People of State of New York ex rel.] Lieberman v. Van De Carr, 199 U.S. 552, 26 S.Ct. 144, 50 L.Ed. 305, and Fischer v. City of St. Louis, 194 U.S. 361, 24 S.Ct. 673, 48 L.Ed. 1018." In City of Grand Rapids v. Braudy, 105 Mich. 670, 64 N.W. 29, 31, 32 L.R.A. 116, an ordinance regulating junk dealers which conferred discretionary power on the common council to grant or refuse a license was held valid. It was said: "Courts cannot interfere with legislative discretion, and are slow to declare ordinances invalid because unreasonable, when the power to legislate upon the subject has been conferred upon the common council. The council's discretion, and not the court's must control. In such matters the city authorities are usually better judges than the courts."

In G. F. Redmond & Co. v. Michigan Securities Commission, 222 Mich. 1, 192 N.W. 688 a statute provided that a license to carry on the business of buying and selling stocks for customers granted under the statute by a state commission could be revoked for "good cause" by the commission. One whose license was revoked under this provision claimed that the commission had no right to revoke except for fraud, and that the term, "good cause," was too indefinite upon which to base a revocation. The court, in the Redmond case, said that a licensee had no right to have the conduct of its business charted by specifications of forbidden practices involving revocation of his license; and that the term, "good cause," as used in the statute, related so clearly to the conduct of the licensed business, within the limits fixed by law, as to negative any arbitrary official action, and was so comprehensive of unlawful, irregular, fraudulent, unauthorized, and forbidden business management and transactions as to require no more particular specification of its meaning and application. The court held that the police power so delegated to the commission was sufficiently defined in the language leaving proper

discretion to the commission. In People v. Harley, 230 Mich. 676, 203 N.W. 531, in a case involving an ordinance providing for the licensing of public lodging houses in the city of Highland Park, Michigan, it was claimed that the ordinance was unconstitutional because it conferred upon the city council the arbitrary power to grant or withhold, or if granted, to revoke a license to operate a public lodging house, unless, as provided in the language of the ordinance, "the city council is satisfied that the applicant is a suitable person to carry on such business and that the granting of such license will not be detrimental to the interests of the public, nor in violation of any statute or any ordinance, rule or regulation of the city of Highland Park". It was contended that the ordinance prescribed no standard by which each person applying for a license could be tested as to his qualifications to operate a lodging house. In its determination of the issue, the court said that if the defendant had applied for a license, it would have been the duty of the city council to consider his application, and if he were found to be a suitable person, the provisions of the ordinance required the granting of the license; that it did not contemplate an arbitrary exercise of power according to caprice or whim, but assumed consideration and care; that, since the power to decide who was a suitable person must be lodged somewhere, the local officials were the best fitted to know the local conditions; that it must be assumed that such officials would act fairly; and if they did not, the courts were open to the injured parties. The court quoted approvingly from State v. Cohen, 73 N.H. 543, 63 A. 928, to the effect that the city officials were not to license persons generally or such persons as they saw fit, but only suitable persons; that there was nothing in the statute, there under consideration, having the least tendency to show an intention that there was to be any discrimination among suitable persons; that the only persons who were to be adjudged unsuitable were those who, in the conduct of the business, would probably defeat, or attempt to defeat, the purpose of the legislature in requiring a license; and that the provision was not intended as a grant of arbitrary power, but only the imposition of a duty upon those officers to be performed by the impartial exercise of a reasonable discretion. In Cutsinger v. City of Atlanta, 142 Ga. 555, 83 S.E. 263, L.R.A. 1915B, 1097, quoted by the Michigan Supreme Court in People v. Harley, supra, the court held that the keeping of a public rooming house was a business so far affecting the public interest as to authorize the regulation and the licensing of the same; and that it was proper and constitutional to give the council discretion in granting or refusing such a license on the ground that the business so far affects the public health, morals, and welfare as to warrant it. The court held that the fact that the statute in that case provided that such a license might be granted or refused in the discretion of the mayor and council, was not intended to confer arbitrary power, but to confer ministerial discretion; that a general grant of discretionary power to issue licenses, under the police power, was not a grant conferring arbitrary power; and if the power was arbitrarily and wrongfully exercised, the courts would apply a remedy.

Appellant, however, submits that the foregoing cases may be distinguished on the ground that the provisions of the ordinances or statutes above referred to deal with the "person" of an applicant—that is, the suitability of such a person for a license—and not with the "place" or site of the park. However, this seems not to be a valid distinction.

In Mehlos v. City of Milwaukee, 156 Wis. 591, 146 N.W. 882, 883, 51 L.R.A.,N.S., 1009, it was held that where an ordinance provided that the mayor should refer applications for dance hall licenses to the chief of police for an investigation as to whether the place satisfied all the requirements of the ordinance, and that such police officer be required to make a written report to the mayor of his investigation, accompanied by his opinion as to whether the application should be granted or refused, such ordinance could not be held void on the ground that it conferred arbitrary power upon the mayor to grant or refuse the license. The ordinance in the above case provided as follows: "No license for a pub-

lic dance hall shall be issued until it shall be found that such hall complies with and conforms to all ordinances, health and fire regulations of the city; that it is properly ventilated and supplied with sufficient toilet conveniences *and is a safe and proper place for the purpose for which it is to be used.*" This is almost the same language that is used in the ordinance in question in the instant case—"is a safe and proper place to be used as an amusement park * *." The court held that the requirements that the place conform to all ordinances, health and fire regulations, and *be a safe and proper place for the purposes for which it was used,* set up a definite, reasonable standard for the granting or refusing of a license by the mayor; that before granting the license, the mayor was required to refer the application to the chief of police for an investigation and report as to whether the place satisfied all the requirements of the ordinance; that the investigator was required to call to his assistance three officials of the city, the building inspector, commissioner of health, and chief of the fire department; that after investigation with the help of these three assistants, the investigator was required to make a report in writing to the mayor, accompanied by his opinion as to whether the application should be granted or refused; that the mayor was required to consider and pass judgment upon the report in coming to his conclusion to grant or refuse the license; that the ordinance provided a careful, impartial, and intelligent investigation of the application for license, and contemplated the mayor would honestly apply his judgment to the result; and that if he should refuse a license without applying his honest judgment to its consideration under such circumstances as to indicate the existence of an improper motive, judicial remedies were ample to redress the wrong.

Another instance of a similar ruling is seen in City of Milwaukee v. Ruplinger, 155 Wis. 391, 145 N.W. 42, 43, where the court had occasion to pass upon the validity of an ordinance with regard to the licensing of junk shops. The ordinance provided that all applications for licenses for the conduct of such business "shall be made to the mayor who may grant or refuse to grant such license as to him may seem best for the good order of the city." It was claimed that the ordinance was invalid as a delegation of arbitrary power; but the court held that it only conferred upon the mayor administrative duties to be exercised in a reasonable and impartial manner. In passing upon the above quoted language of the ordinance, the court observed that it was quite general in its terms, but that "if by any fair construction of that language all that was left to the mayor was the exercise of mere administrative functions in a reasonable manner," it was not a delegation of arbitrary power. The court said: "Now it seems that the ordinance in question easily admits of a construction conferring on the mayor administrative duties, only, to be exercised in an impartial manner. The language must be construed in connection with the whole ordinance of which it forms a part. The scheme was to make the keeping of a junk shop, without first obtaining a license, an offense against a city regulation, punishable by a penalty as provided expressly in the city charter. The only thing left for the mayor to do was to pass upon candidates for municipal favor. * * * Necessarily, application for the license has to be made to some one and some one has to supervise its issuance. Those are matters of administration. Necessarily, also, if the city desires to discriminate as to the character of the persons whom it will permit to operate junk shops within its limits, that is matter of administration. Evidently, for the purpose of such discrimination and that only, it was provided that applications for licenses shall be to the mayor "who may grant or refuse to grant such license as to him may seem best for the good order of the city. * * * The idea that the purpose of the ordinance was to confer upon the mayor power to act arbitrarily so as to suppress the business of keeping junk shops instead of regulating it, or to pass favorably upon one candidate for a license and unfavorably upon another under the same or similar circumstances, or do otherwise than, having the 'good order of the city' as the objective, pass reasonably upon the suitability of a candidate for license, within the field of that discretion which is administrative as distinguished from legislative,

and act upon judgment as distinguished from acting upon mere whim, prejudice or caprice, is repellent to the whole scheme embodied in the ordinance and must be rejected. * * * The licensing of such business was provided for, as before indicated, in all its details, leaving only to the judgment of the mayor as regards suitability of candidates."

In City of Buffalo v. Hill, 79 App.Div. 402, 79 N.Y.S. 449, 451, where a city ordinance established public markets, and required persons selling certain meats elsewhere to take out a license to be issued by the mayor, after a two-thirds vote, it was held that the ordinance did not vest in the council an arbitrary power to grant or refuse a license in obedience to a private motive instead of the public good and hence was not outside the police power so as to be obnoxious to the due process clause of the Federal Constitution. The appellate division of the supreme court said: "In an action of this kind, the motives—the animus—of the individual members who compose the council are not pertinent. The presumption always is that in the exercise of a discretionary power by any executive or legislative body a proper motive and a valid reason existed for its action. A public declaration of its reasons would neither be wise nor beneficial, for ordinarily it would not allay the irritation of the one deprived of the favor sought, and the people of the city at large have little concern in the exercise of those official functions which relate to an individual. In considering the question of authority, therefore, we must do so upon the assumption that the municipal body has intended to act for the benefit of the public at large, and that the refusal to grant the license was based upon reasons which it deemed adequate for that action. Two elements may control the municipal body in the consideration of an application for a license to sell meat. First. The individual applicant. Will he be likely to sell wholesome meat? Will his market be cleanly? It he a fit man? Secondly. *The place where he expects to ply his trade. Is it suitable and proper?* * * * After all, in every case which may arise the criterion by which the ordinance or enactment is to be measured is whether it is reasonable. * * * If it truly is a judicious regulation of any occupation for the benefit of the public, the courts will uphold it, within the compass of the police power. If that power is invoked to shield an unfair discrimination, the ordinance will receive judicial condemnation. There is no class of business calling for more watchful supervision than that of the sale of meats. * * * To the municipality must be intrusted the authority to regulate it whenever necessary, and beyond that, within reasonable limits, to prevent unfit persons from engaging in it." (Emphasis supplied.)

In People of State of New York ex rel. Lieberman v. Van De Carr, 199 U.S. 552, 26 S.Ct. 144, 145, 50 L.Ed. 305, an ordinance which provided that no milk should be received, held or kept, either for sale or delivered within the city of New York, without a permit in writing from the board of health, was attacked because it conferred "absolute and despotic power to grant or withhold permits to milk dealers". It was held that these were questions that arise in the administration of the law, but do not affect its validity, and that an arbitrary exercise of the discretionary power conferred was subject to judicial review in a proper proceeding. The court said:

"The right of the state to regulate certain occupations which may become unsafe or dangerous when unrestrained, in the exercise of the police power, with a view to protect the public health and welfare, has been so often and so recently before this court that it is only necessary to refer to some of the cases which sustain the proposition that the state has a right, by reasonable regulations, to protect the public health and safety. * * *

"These cases leave in no doubt the proposition that the conferring of discretionary power upon administrative boards to grant or withhold permission to carry on a trade or business which is the proper subject of regulation within the police power of the state is not violative of rights secured by the 14th Amendment. There is no presumption that the power will be arbi-

trarily exercised, and when it is shown to be thus exercised against the individual, under sanction of state authority, this court has not hesitated to interfere for his protection, when the case has come before it in such manner as to authorize the interference of a Federal court."

With reference to the action of the city of New York in refusing the applicant in that case a license, the court said: "There is nothing in the record to show that the action against him was arbitrary or oppressive and without a fair and reasonable excise of that discretion which the law reposed in the board of health."

In Fischer v. City of St. Louis, 194 U.S. 361, 24 S.Ct. 673, 675, 48 L.Ed. 1018, an ordinance regulating the keeping of dairies and cow stables within the city limits was under attack, and in determining the case, the court said:

"The power of the legislature to authorize its municipalities to regulate and suppress all such places or occupations as, in its judgment, are likely to be injurious to the health of its inhabitants, or to disturb people living in the immediate neighborhood by loud noises or offensive odors, is so clearly within the police power as to be no longer open to question. * * * Of course, cases may be imagined where the power to issue permits may be abused, and the permission accorded to social or political favorites and denied to others, who, for reasons totally disconnected with the merits of the case, are distasteful to the licensing power. No such complaint, however, is made to the practical application of the law in this case, and we are led to infer that none such exists. We have no criticism to make of the principle of granting a license to one and denying it to another, and are bound to assume that the discrimination is made in the interest of the public, and upon conditions applying to the health and comfort of the neighborhood."

From the record on appeal before the Michigan Supreme Court, which was filed as an exhibit in the instant case, it appears that in a statement to the city council with respect to a license applied for by the Eastwood Park Amusement Company to operate the amusement park (which is the same park for which Tower Realty, Inc., seeks such a license), the mayor reported:

"Eastwood Park is a large factor in contributing towards juvenile delinquency, as evidenced by newspaper articles, photostatic copies of which are on file in the Municipal office of the City of East Detroit; * * *. Further, at public meetings wherein the Eastwood Park situation was discussed, citizens testified that their homes had been broken into and robbed; private cars broken into and looted, and that they had been provoked and frightened by 'window peepers'; all this being prevalent only during the season in which the park is in operation; * *. Further, Eastwood Park creates a traffic hazard, being situated on the corner which is a junction between Highway M-29 (Eight Mile Road) and U. S. 25 (Gratiot), an extremely busy thoroughfare, and the continual parking and unparking of cars in the center parkway area on both highways constitutes a dangerous traffic condition; Further, the housing shortage created by restrictions on building during the war years, also plays a part in the objection to the park; the area around the park has been developed into a residential section, due to the rapid increase in the City's population; in 1928, when Eastwood Park first began operating, East Detroit's population was approximately 6,852; its present population, according to post office records is approximately 22,000, and it is evident that East Detroit has outgrown the park to the extent that home owners' investments and families should be protected against the aforementioned existing conditions. * * *"

■ The foregoing is not referred to as a basis for decision in this case. It merely indicates, in spite of appellant's contentions to the contrary, what may well have been the actual reason for the mayor's decision

as to whether the place was safe and proper for an amusement park. But the burden is not upon the City to justify its refusal to issue a license, but, rather, upon appellant to show that the action of the council, in not issuing the license, was arbitrary or oppressive and without a fair and reasonable exercise of the discretion reposed in the council by law.

In replying to the argument in the brief of the City of East Detroit in the appeal in the Michigan Supreme Court, and its citation of Melconian v. City of Grand Rapids, supra, appellant stated that, in that case, it was held that discretionary authority might be conferred upon a governmental agency to grant or refuse a license where public health or safety was involved; but that, in the instant case, the public health or safety is not involved. We will discuss this matter hereafter, but, here, it is sufficient to say that, while the public health and safety were mentioned as justifying the refusal of a license in the above case, nevertheless, this meant no more than that it found its justification in the police power.

■ The police power includes the protection of the safety, health, prosperity, morals, comfort, convenience, and welfare of the public or any substantial part of the public. Schmidinger v. City of Chicago, 226 U.S. 578, 33 S.Ct. 182, 57 L.Ed. 364; Bacon v. Walker, 204 U.S. 311, 27 S.Ct. 289, 51 L.Ed. 499; Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940; Barbier v. Connolly, 113 U.S. 27, 5 S.Ct. 357, 28 L.Ed. 923; Lake Shore & Michigan Southern Ry. Co. v. Ohio, 173 U.S. 285, 19 S.Ct. 465, 43 L.Ed. 702; Chicago, B. & Q. Railway Co. v. People of State of Illinois ex rel. Drainage Com'rs, 200 U.S. 561, 26 S.Ct. 341, 50 L.Ed. 596. "Ordinances having for their purpose regulated municipal development, the security of home life, the preservation of a favorable environment in which to rear children, the protection of morals and health, the safeguarding of the economic structure upon which the public good depends, the stabilization of the use and value of property, the attraction of a desirable citizenship and fostering its permanency, are within the proper ambit of the police power." Cady v. City of Detroit, 289 Mich. 499, 514, 286 N.W. 805, 810.

A reading of the provisions of the ordinance before us indicates that they were largely concerned with the prevention of disorderly conduct, gambling, and games of chance; the avoidance of immoral, profane, and indecent language, as well as the sale or giving away of intoxicating beverages; and the prevention of the establishment in the city of a center and resort for thieves, prostitutes, and other disorderly persons. Moreover, the ordinance was further concerned with the compliance with all laws and ordinances, and rules and regulations of the police department and the board of health. The report of the mayor emphasized these matters, setting forth that, in the opinion of that official, the amusement park was a large factor in contributing to juvenile delinquency; that it was a place where window-peepers, thieves, and burglars resorted; that it constituted a menace to property and life; and that, because of the parking of cars in the center area of two main highways in a thickly populated community, it created a dangerous traffic hazard.

■ There can be no question that, in the case before us, the licensing provisions of the ordinance found their justification in the police power.

The provisions of the ordinance and the report by the mayor indicate that the conditions set forth therein justified reposing discretionary judgment in the council or the mayor as to whether the place for which a license was sought was a safe and proper place to be used as an amusement park, and that, under the police powers, the reposing by ordinance of such a discretion in the mayor did not result in conferring arbitrary and unconstitutional power upon that official. In this proceeding, we are asked to render a declaratory judgment holding that the ordinance is unconstitutional because of the provision in question.

■ Under the foregoing authorities, the provisions in the ordinance before us that no license should be issued unless such place for which it is issued complies with all laws and ordinances, and with all rules and regulations of the building department, police department, and board of health, and "in the opinion of the Mayor is a safe and

proper place to be used as an amusement park," do not constitute a delegation of arbitrary power. Every reasonable presumption or intendment must be indulged in favor of the validity of the ordinance; and, in case of doubt, every presumption not clearly inconsistent with the language and subject matter is to be made in favor of its constitutionality. It is our conclusion that this section of the ordinance did not place in the hands of the mayor such arbitrary power, but, rather, conferred upon that official a proper discretion, and contemplated action, not upon whim or caprice, but upon a disinterested and impartial exercise of judgment in a reasonable manner in the public interest.

We have thus outlined the basis for our determination that Section 19 of the ordinance in question was not unconstitutional in lodging arbitrary power in the hands of the mayor, but, rather, conferred upon him a proper discretion.

In this case, however, we are asked, in addition to declaring Section 19 unconstitutional, to enter a declaratory judgment to the effect that many other sections of the ordinance which have not been in issue in any cases passed upon by the Michigan Supreme Court are unconstitutional and void. The Declaratory Judgments Act, 28 U.S.C.A. §§ 2201, 2202 reposes in the court discretion as to whether declaratory relief should be granted. It is the duty of federal courts to avoid the unnecessary decision of constitutional questions. "But the use of the declaratory judgment procedure to test the validity of a state statute for vagueness and uncertainty invites rather than avoids the unnecessary decision of the constitutional question. Most courts conceive it to be their duty to construe a statute, whenever reasonably possible, so that it may be constitutional rather than unconstitutional. * * * State courts, when given the opportunity by the presentation to them for decision of an actual case or controversy, may, and often do, construe state statutes so that in their application they are not open to constitutional objections which might otherwise be addressed to them. * * * In advance of an authoritative construction of a state statute, which the state court alone can make, this Court cannot know whether the state court, when called on to apply the statute to a defined case or controversy, may not construe the statute so as to avoid the constitutional question. For us to decide the constitutional question by anticipating such an authoritative construction of the state statute would be either to decide the question unnecessarily or rest our decision on the unstable foundation of our own construction of the state statute which, the state court would not be bound to follow. * * * Such is not the function of the declaratory judgment. * * * It would be an abuse of discretion for this Court to make a pronouncement on the constitutionality of a state statute before it plainly appeared that the necessity for it had arisen, or when the court is left in uncertainty, which it cannot authoritatively resolve, as to the meaning of the statute when applied to any particular state of facts. In any event the parties are free to litigate in the state courts the validity of the statute when actually applied to any definite state of facts, with the right of appellate review in this Court. In the exercise of this Court's discretionary power to grant or withhold the declaratory judgment remedy it is of controlling significance that it is in the public interest to avoid the needless determination of constitutional questions and the needless obstruction to the domestic policy of the states by forestalling state action in construing and applying its own statutes." Alabama State Federation of Labor v. McAdory, 325 U.S. 450, 470, 65 S.Ct. 1384, 1394, 89 L.Ed. 1725. See also Great Lakes & Dock Dredge Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407; Brillhart v. Excess Ins. Co., 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620; Watson v. Buck, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416; Panhandle Eastern Pipe Line Co. v. Michigan Consolidated Gas Co., 6 Cir., 177 F.2d 942; California Ass'n of Employers v. Bldg. & Construction Trades Council, 9 Cir., 178 F.2d 175. Where a city ordinance is attacked on grounds that it is invalid under the Federal Constitution, the same rule applies. City of Chicago v. Fieldcrest Dairies, Inc., 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355.

In consonance with the above authorities, determination by a federal court of the constitutionality of the several other sections of the ordinance in question should await the prior determination of that issue by the state courts; and this is more emphatically the case where, as here, the question as to the constitutionality of the principal section of the ordinance under attack has been resolved against appellant's contentions. For these reasons, we are of the opinion that the various sections of the ordinance other than Section 19, are not properly before us for determination prior to their consideration by the state courts.

In accordance with the foregoing, the judgment of the district court is affirmed.